THE STATE EX REL. HAMILTON ET AL. *v.* CLINTON COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Hamilton v. Clinton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 556.]

(No. 93–1538—Submitted September 13, 1993—Decided September 14, 1993—Opinion announced October 14, 1993.)

558

*Crabbe, Brown, Jones, Potts & Schmidt, Larry H. James* and *Brian E. Hurley,* for relators.

*William E. Peelle,* Clinton County Prosecuting Attorney, and *Thayne D. Gray,* Assistant Prosecuting Attorney, for respondents Board of Elections et al.

*Michael C. Murray,* for intervening respondent Florida Transfer & Freight, Inc.[1]

---

*Per Curiam.* The issue presented in this case is: Did the board of elections abuse its discretion in rejecting relators' petition because of a misleading resolution summary? For the reasons that follow, we hold that the petition did not fairly and accurately summarize Resolution No. 93–400. Accordingly, we deny the writ of mandamus.

R.C. 303.12(H) requires that a petition for referendum on a county zoning resolution contain the name by which the resolution is known and a "brief summary of its contents." The purpose of requiring a summary is "to present fairly and accurately the question or issue to be decided in order to assure a free, intelligent and informed decision by the persons to whom it is presented. Cf. *State, ex rel. Schultz, v. Bd. of Elections* (1976), 48 Ohio St.2d 173 [2 O.O.3d 372, 357 N.E.2d 1079] (including a resolution in its entirety when only a part of it was intended to be submitted to the electorate was held to be a fatal defect); *Markus v. Bd. of Elections* (1970), 22 Ohio St.2d 197 [51 O.O.2d 277, 259 N.E.2d 501] (setting forth the guiding principle that the text of a ballot statement originating with a referendum petition must fairly and accurately present the issue to be decided)." *Nunneker v. Murdock* (1983), 9 Ohio App.3d 73, 77, 9 OBR 93, 97, 458 N.E.2d 431, 436.

The standard for a valid zoning referendum petition was stated in *Shelly & Sands, Inc. v. Franklin Cty. Bd. of Elections* (1984), 12 Ohio St.3d 140, 141, 12 OBR 180, 181, 465 N.E.2d 883, 884:

" * * * [T]he petition must contain an accurate and unambiguous summary of the issue sought to be submitted to the electorate. If the summary is misleading, inaccurate, or contains material omissions which would confuse the average person, the petition is invalid and may not form the basis for submission to a vote. [Citation omitted.]"

---

1. FT & F has moved to intervene as a respondent, or, in the alternative, to file as an *amicus curiae.* FT & F's interest is sufficient to intervene as of right under Civ.R. 24(A), and the motion is sustained. Relators' motion to amend the case caption to include "State ex rel.," which the board does not oppose, is also sustained.

We will set aside decisions of a board of elections and grant a writ of mandamus to compel a referendum election where fraud, abuse of discretion, or clear disregard of statutes or applicable legal provisions is shown. *State ex rel. Senn v. Cuyahoga Cty. Bd. of Elections* (1977), 51 Ohio St.2d 173, 175, 5 O.O.3d 381, 382, 367 N.E.2d 879, 880; *State ex rel. Citizens for a Better Beachwood v. Cuyahoga Cty. Bd. of Elections* (1991), 62 Ohio St.3d 167, 168, 580 N.E.2d 1063, 1064.

Relators argue that the summary of Resolution No. 93–400 is not misleading or confusing and, therefore, that the board abused its discretion in rejecting their petition. FT & F responds that the resolution summary failed to accurately set forth the number of acres to be rezoned and omitted any reference to the proposed construction of a wastewater treatment plant. The board claims that its decision was based on these considerations, among others, and that all are supported by substantial evidence.

Statements made during the protest hearing indicate that the resolution summary overstates the number of acres rezoned by Resolution No. 93–400. Apparently, significantly fewer than the approximately three hundred acres originally proposed in Phase II of FT & F's development plan were recommended for rezoning by the Clinton County Rural Zoning Commission. The Clinton County Board of Commissioners adopted this modification in Resolution No. 93–400, but relators' summary of the resolution nevertheless referred to "300 Acres, more or less," as comprising Phase II.

We are unable to determine from this record the exact disparity between the acreage identified in the summary and the acreage actually rezoned by Resolution No. 93–400. The rural zoning commission's recommended modification has not been supplied. Thus, the number of rezoned acres can be ascertained only by referring to "Exhibit A" of the resolution, which, evidently, is a map representing rezoned acreage in appropriately highlighted phases of development. But these highlighted areas, apparently in different colors in the original, are only shaded in the photocopy of Exhibit A provided here, which makes the three phases of FT & F's development indistinguishable. Moreover, the acreage of one parcel, that belonging to "P.B. Haines," is indecipherable.

Relators, however, do not suggest that their resolution summary accurately described the acreage rezoned by Resolution No. 93–400. They argue instead that their summary is sufficient because it incorporates acreage stated in the preamble to the resolution and in FT & F's application to rezone. We disagree. The preamble reference was a restatement of the acreage described in FT & F's application for rezoning and, as just discussed, Resolution No. 93–400 did not rezone all that acreage. The resolution summary, therefore, was misleading in that it exaggerated the effect of Resolution No. 93–400.

But relators insist that the board rejected their petition for another reason—the absence of any reference in the resolution summary to a water treatment plant. They claim that the board acted on the recommendation of its counsel, who discounted the objections to acreage disparity because the involved property was accurately described in the map circulated with the petition. The board's counsel advised that the water treatment plant was the "most significant" omission in the petition.

The board may have accepted this conclusion, but we cannot be certain. The board declared the referendum petition insufficient without providing any explanation. Thus, although it rejected the petition almost immediately after its counsel made his recommendation, the board might have relied on any of the considerations presented for its review.

Regardless, relators challenge the conclusion that mention of a wastewater treatment plant was necessary for an accurate petition summary of Resolution No. 93–400. They argue that including the wastewater treatment facility would have misled voters because (1) Resolution No. 93–400 did not expressly require construction of a wastewater treatment facility, and (2) the facility was proposed in FT & F's development plan only as a possible use. Relators rely on *Olen Corp. v. Franklin Cty. Bd. of Elections* (1988), 43 Ohio App.3d 189, 193–194, 541 N.E.2d 80, 85–86, which holds that a resolution summary is properly taken from the resolution itself, not the original zoning application.

Here, however, Resolution No. 93–400 incorporates the uses proposed in FT & F's development plan with the language, "[t]he property described in Exhibit A shall be used for purposes substantially conforming to the Petitioner's development plan, as amended." Thus, while relators also used this language in summarizing the resolution, adequate notice arguably requires them to go further and summarize provisions the resolution incorporates. Indeed, relators specified other uses, *i.e.*, "truck freight terminal and ancillary enterprises, warehousing and distribution buildings, food service, and recreation," that Resolution No. 93–400 did not specify on its face.

On the other hand, the construction of a wastewater treatment facility is speculative. FT & F's development plan merely asked the Clinton County Commissioners to "consider" these "options":

"1. The developer, either at its own expense or with government assistance, shall finance and construct a wastewater containment, treatment and disposal system for the area. The system would be designed to discharge fully treated wastewater to Anderson Forks within the limits and guidelines dictated by the Ohio EPA. If developer-financed, the facility would be donated to the County; or,

"2. The County, the developer and the Ohio EPA work to design a county-wide sanitary sewer district for Clinton County. Obviously, this would be a major undertaking but may be quite necessary as the years go by."

By addendum to its application, FT & F requests rezoning for a proposed "Public or Commercial Sewage Plant," such facilities apparently being permitted in Clinton County only in I–1, or industrial districts. The addendum further qualifies plant construction:

"If a sewage plant is not constructed on the I–1 site within a specified time (e.g. 5 or 10 years) the parcel shall revert to B–2 classification to match the surrounding property named in the Application."

Because the construction of a wastewater treatment plant is uncertain, relators cannot be faulted for omitting it from their summary of Resolution No. 93–400. However, we have already said that relators failed to account in the resolution summary for the modification of acreage affected by FT & F's rezoning application and that this caused the summary to significantly overestimate the acreage rezoned by Resolution No. 93–400. Referendum petitions have been held invalid for conveying a confusing or mistaken impression as to the effect of a zoning resolution. *Shelly, supra,* and *Olen, supra.*

Accordingly, relators have failed to show that the board of elections abused its discretion in rejecting relators' petition due to inaccurate acreage. A writ of mandamus to certify and place the referendum on the general election ballot, therefore, is denied.[2]

*Writ denied.*

MOYER, C.J., A.W. SWEENEY, WRIGHT, RESNICK and F.E. SWEENEY, JJ., concur.

DOUGLAS and PFEIFER, JJ., dissent.

PFEIFER, J., dissenting. This election case arises out of the Clinton County Board of Elections' determination that a referendum on a resolution passed by the Clinton County Board of Commissioners not be added to the November ballot because the petition calling for the referendum contained an inaccurate summary of the resolution at issue.

The relators' summary is as accurate as one could reasonably expect without restating the entire resolution. Given the complexity of the resolution, even a complete restatement may not have been any more instructive to voters.

I am confident that the summary of the resolution would allow the residents of Clinton County to understand the ballot issue. Since relators have filed a

---

2. For earlier cases, see 67 Ohio St.3d 1448, 619 N.E.2d 1, and 67 Ohio St.3d 552, 621 N.E.2d 388.

referendum petition with the required number of signatures, I would grant the writ to allow the election to go forward.

DOUGLAS, J., concurs in the foregoing dissenting opinion.