346

THE STATE EX REL. MCCORD ET AL. *v.* DELAWARE
COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. McCord v. Delaware Cty. Bd. of
Elections,* 106 Ohio St.3d 346, 2005-Ohio-4758.]

(No. 2005–1527—Submitted September 2, 2005—Decided September 13, 2005.)

**Per Curiam.**

{¶ 1} Relator Margaret Carole McCord is a Kingston Township, Delaware County, Ohio elector. McCord actively supports the efforts of relator NorthStar Land, L.L.C. ("NorthStar") to develop certain real property in Kingston Township that is the subject of this action. Relator Robert J. Weiler is a member of NorthStar and owns some of the property.

*Initial Zoning Resolution and Referendum Petition*

{¶ 2} In 2002, NorthStar requested that 866.47 acres of property in Kingston Township be rezoned from Farm Residence to Planned Residence District for the "development of about 723 residential building lots, including a golf course, open spaces, land set aside for schools, and land application for sewage treatment." On December 26, 2002, the Kingston Township Board of Trustees adopted Resolution R2002–08, which approved NorthStar's zoning application. The resolution reiterated the foregoing uses, which were set forth in NorthStar's application.

{¶ 3} A group of citizens known as Citizens for Managed Growth ("Citizens") objected to the NorthStar development and began circulating a petition for a referendum on Resolution R2002–08. The petition summarized all of the uses specified in the resolution by stating as follows:

{¶ 4} "The Trustees of Kingston Township approved the rezoning of 866.47 acres from Farm Residence District (FR–1) to Planned Residence District (PRD), in an area of Kingston Township generally located east of N. Galena Rd. and west of Carter's Corner Rd. and north of Wilson Rd. The Planned Residence District, as approved, includes the development of approximately 723 residential

building lots, a golf course, open spaces, land area set aside for schools, and land application for sewage treatment."

{¶ 5} The petition also included a map on which the petitioners had outlined the area affected by the zoning resolution. Within the outlined area is a notation that relator Weiler owned some of the property with his wife. Above Weiler's name is written "967.787 (509.254 in Berkshire)." The map also indicated the boundary between Kingston Township and Berkshire Township. Citizens filed its petition, and at a referendum election in November 2003, Kingston Township electors voted 398 to 378 against Resolution R2002–08.

### Second Zoning Resolution and Referendum Petition

{¶ 6} In April 2004, NorthStar filed a second application to rezone the 866.47 acres of property in Kingston Township, this time from Farm Residential and Recreational District[1] to Planned Residential District. Following discussions with the Kingston Township Zoning Commission, NorthStar attempted to address the voters' and the township's concerns by reducing the number of proposed single-family residential lots for the development from 723 to 653 and donating 25 acres to Kingston Township for a new township hall.

{¶ 7} The township zoning commission recommended approval of NorthStar's second application. At the zoning commission's request, NorthStar signed a development agreement memorializing the terms of the commission's recommendation for approval. The development agreement was titled in part "Motion for recommendation of conditional approval for rezoning of approximately 866.47 acres from (FR–1) Farm Residential and Recreational District (REC) to PRD Planned Residential District as amended throughout the rezoning hearings dated June 3, 2004, July 7, 2004 and August 9, 2004" and listed 13 items to which NorthStar had agreed. The development agreement specified that the affected area would include no more than 653 single-family residential lots and would include a golf course, open spaces, and land set aside for schools. Under the development agreement, NorthStar would deed to Kingston Township 191.6 acres of farm-preservation area, 103.6 acres of passive-recreation area, including 20 acres set aside for the Big Walnut School System, and 25 acres for a township hall. The 25 acres to be donated for a township hall has been estimated to be worth over $625,000.

{¶ 8} The township board of trustees conducted hearings on NorthStar's application. At one of the hearings, the chairman of the township zoning commission read NorthStar's development agreement into the record. Copies of

---

1. Before NorthStar filed this application, some of the property had been rezoned at NorthStar's request to Recreational District to permit the development of a golf course.

the development agreement were made available to everyone in attendance at the hearings.

{¶ 9} On December 9, 2004, the board of township trustees adopted a resolution approving NorthStar's "application as presented by the zoning commission." On December 27, 2004, the board of township trustees designated the resolution "Resolution 2004–10." Citizens again opposed the rezoning and circulated a petition to submit Resolution 2004–10 to the township electorate. Citizens filed the petition on January 8, 2005.

{¶ 10} The referendum petition summarized Resolution 2004–10 as follows:

{¶ 11} "Kingston Township Resolution 2004–10 to approve an application to rezone 773.287 acres more or less, from Farm Residential District (FR–1) to Planned Residential District (PRD) and 93.183 acres, more or less, from Recreation District (REC) for a total of 866.47 acres, more or less, to Planned Residential District (PRD).

{¶ 12} "The trustees of Kingston Township approved the rezoning of land from Farm Residential District (FR–1), consisting of approximately 773.287 acres, more or less, and Recreation District (REC), consisting of 93.183 acres, more or less, for a total of 866.47 acres, more or less, to Planned Residential District (PRD), in an area of Kingston Township generally located east of North Galena Road and west of Carters Corner Road and north of Wilson Road. *A map showing the area subject to the rezoning is attached hereto. The Planned Residential District (PRD), includes residential building lots, a golf course, open spaces, and lands set aside for schools.* The development plan may be viewed at the Township offices." (Underlining sic. Italics added.)

{¶ 13} In the map attached to the petition, portions of the property outlined included notations that some of the property was located in Berkshire Township, but unlike the map attached to Citizens' previous referendum petition, it did not indicate the boundary between Kingston Township and Berkshire Township.

{¶ 14} In February 2005, upon the request of respondent Delaware County Board of Elections Director Janet Brenneman, a Delaware County Assistant Prosecuting Attorney reviewed the referendum petition and determined that the petition was defective and should not be placed on the November 8, 2005 election ballot because, among other reasons, the petition did not contain an accurate summary of the resolution or an appropriate map of the area affected by the resolution. Notwithstanding this advice, respondent board of elections accepted the referendum petition on Resolution 2004–10 and placed the resolution on the November 8, 2005 ballot.

{¶ 15} In June 2005, McCord protested the petition pursuant to R.C. 3501.39. McCord claimed, inter alia, that the petition summary was inaccurate and

ambiguous and that the map was not an appropriate map of the area affected. On August 2, 2005, the board of elections conducted a hearing on the protest at which the parties introduced sworn testimony. At the hearing, Citizens' attorney claimed that the petitioners got a copy of the map from the county map room. The maps in the county map room, however, included the boundary between Kingston and Berkshire Townships. The board denied the protest and allowed the referendum on Resolution 2004–10 to remain on the November 8 ballot.

{¶ 16} On August 15, 2005, relators, McCord, Northstar, and Weiler, filed this action against respondents, the board of elections, its members, director, and deputy director (collectively, "board"). Relators request (1) a writ of mandamus ordering the board of elections to reject and find insufficient the referendum petition concerning Resolution 2004–10 and (2) a writ of prohibition preventing the board from submitting Resolution 2004–10 to the township electorate on November 8, 2005. On August 22, 2005, respondents answered the complaint. On August 26, we granted Citizens' motion to intervene as an additional respondent. On August 29, relators moved to vacate the entry permitting Citizens to intervene or, in the alternative, to strike Citizens' answer.

{¶ 17} Evidence and briefs were filed pursuant to the accelerated schedule for expedited election matters in S.Ct.Prac.R. X(9). This cause is now before us for our consideration of relators' motion and the merits.

### Motion to Vacate Entry Granting Motion to Intervene or, in the Alternative, to Strike Answer

{¶ 18} Relators move to vacate our August 26 entry granting Citizens' motion to intervene as an additional respondent or, in the alternative, to strike Citizens' answer. Relators claim that Citizens' "failure to timely file and properly serve its motion has prejudiced Relators."

{¶ 19} Relators correctly observe that Citizens failed to properly serve its answer when it served the parties by mail. See S.Ct.Prac.R. XIV(2)(B)(3) ("In expedited election cases under S.Ct.Prac.R. X, Section 9, service of the response, evidence, and merit briefs *shall be personal or by facsimile transmission*" [emphasis added]).

{¶ 20} They also persuasively contend that Citizens' August 23 motion to intervene and answer were untimely because S.Ct.Prac.R. X(9) required a response to relators' complaint by August 22. See, e.g., *State ex rel. Commt. for Charter Amendment, City Trash Collection v. Westlake,* 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 16 ("Extreme diligence and promptness are required in election-related matters"); *State ex rel. First New Shiloh Baptist Church v. Meagher* (1998), 82 Ohio St.3d 501, 503, 696 N.E.2d 1058 ("Whether a

Civ.R. 24 motion to intervene is timely depends on the facts and circumstances of the case").

{¶ 21} Nevertheless, because Citizens failed to timely file its evidence and merit brief, which were due on August 29, relators have not been prejudiced by either Citizens' intervention in this expedited election action or its answer. See S.Ct.Prac.R. XIV(2)(D)(2) ("If the Supreme Court determines * * * that service was not made [as required] but the movant [of the motion to strike] was not adversely affected, it may deny the motion"). Thus, any possible error in allowing Citizens to intervene is harmless.

{¶ 22} Therefore, we deny relators' motion.

### Mandamus

{¶ 23} Relators claim that they are entitled to a writ of mandamus to compel the board of elections to find the referendum petition insufficient and to reject it.

{¶ 24} " 'In general, if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction.' " *State ex rel. Phillips v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 535, 537, 757 N.E.2d 319, quoting *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 634, 716 N.E.2d 704.

{¶ 25} Like the relators in *State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 20, relators here attempt to couch their request for extraordinary relief in mandamus in terms of compelling certain affirmative duties by the board of elections. But the manifest objectives of their claim are a declaratory judgment—to declare the referendum petition insufficient—and a prohibitory injunction—to prevent Resolution 2004–10 from being placed on the November 8, 2005 election ballot.

{¶ 26} Therefore, we lack jurisdiction over relators' mandamus claim and must dismiss it. Id. at ¶ 22; *Phillips,* 93 Ohio St.3d at 537, 757 N.E.2d 319; cf. *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 290–291, 649 N.E.2d 1205 (mandamus will not lie to enjoin a board of elections from placing an issue on election ballot when the board has conducted a quasi-judicial hearing pursuant to R.C. 3501.39 on protest against initiative petition).

### Prohibition

{¶ 27} Relators also seek a writ of prohibition to prevent the board of elections from submitting Resolution 2004–10 to the township electorate on November 8, 2005. To be entitled to the writ, relators must establish that (1) the board is about to exercise quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other

adequate remedy exists in the ordinary course of law. *Campaign to Elect Larry Carver Sheriff v. Campaign to Elect Anthony Stankiewicz Sheriff,* 101 Ohio St.3d 256, 2004-Ohio-812, 804 N.E.2d 419, ¶ 9.

{¶ 28} The board exercised quasi-judicial authority by denying McCord's protest following an R.C. 3501.39 hearing that included sworn testimony. See *Christy v. Summit Cty. Bd. of Elections* (1996), 77 Ohio St.3d 35, 37, 671 N.E.2d 1. "[E]ven if the board already exercised its quasi-judicial power by denying [the] protest, relief in prohibition is still available to prevent the placement of names or issues on a ballot, as long as the election has not yet been held." *Tatman v. Fairfield Cty. Bd. of Elections,* 102 Ohio St.3d 425, 2004-Ohio-3701, 811 N.E.2d 1130, ¶ 14.

{¶ 29} In addition, relators lack an adequate remedy in the ordinary course of law because given the proximity of the election in this expedited election case, any appellate process would last well past the election. See *Thurn,* 72 Ohio St.3d at 291–292, 649 N.E.2d 1205; *State ex rel. Smart v. McKinley* (1980), 64 Ohio St.2d 5, 6, 18 O.O.3d 128, 412 N.E.2d 393; cf. *Tatman,* 102 Ohio St.3d 425, 2004–Ohio–3701, 811 N.E.2d 1130, ¶ 17–18.

{¶ 30} Therefore, the dispositive issue for relators' prohibition claim is whether the board of elections acted in an unauthorized manner in denying the protest and deciding to submit the resolution to the township electorate. "In extraordinary actions like prohibition challenging the quasi-judicial decision of a board of elections, 'the applicable standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions.'" *State ex rel. Baur v. Medina Cty. Bd. of Elections* (2000), 90 Ohio St.3d 165, 166, 736 N.E.2d 1, quoting *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections* (1999), 87 Ohio St.3d 132, 135–136, 717 N.E.2d 1091. An abuse of discretion evidences an attitude that is unreasonable, arbitrary, or unconscionable. *State ex rel. Miller v. Cuyahoga Cty. Bd. of Elections,* 103 Ohio St.3d 477, 2004-Ohio-5532, 817 N.E.2d 1, ¶ 16.[2]

{¶ 31} Relators assert that the board of elections abused its discretion and clearly disregarded applicable laws in denying the protest and placing Resolution 2004–10 on the November 8, 2005 election ballot. More specifically, relators

---

2. Notwithstanding respondents' argument to the contrary and our recognition that boards of elections "are the *local authorities* best equipped to gauge compliance with election laws," see *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 231, 685 N.E.2d 754, we need accord no deference to a board of elections' interpretation of state election law. (Emphasis added.) Cf. *Whitman v. Hamilton Cty. Bd. of Elections,* 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 22 (recognizing that it is "our duty to defer to the *Secretary of State's* interpretation of election law if it is subject to two different, but equally reasonable, interpretations" because the Secretary of State is the state's chief election officer [emphasis added] ).

claim that the referendum petition was defective because it did not comply with the "brief summary" and "appropriate map" requirements of R.C. 519.12(H).

## Constitutional Right of Referendum

{¶ 32} Respondents counter that the "central issue in this case * * * involves the constitutional right of referendum, guaranteed in the Ohio Constitution in Article II, Section 1f, and the access that citizens have to exercise that right."

{¶ 33} Respondents' assertion lacks merit. Section 1f, Article II of the Ohio Constitution is limited to initiative and referendum powers "reserved to the people of each *municipality* on all questions which such *municipalities* may now or hereafter be authorized by law to control by legislative action." (Emphasis added.) See, also, Steinglass and Scarselli, The Ohio State Constitution: A Reference Guide (2004) 127 ("Section 1f extends the initiative and referendum to local municipalities on all matters that are subject to legislative action"). Section 1f, Article II does not confer any constitutional right of referendum on township electors challenging township resolutions.

{¶ 34} Therefore, the right of referendum specified in R.C. 519.12(H), not a constitutional right of referendum, is at issue here.

## Substantial Compliance

{¶ 35} Respondents next argue that in assessing Citizens' compliance with the requirements of R.C. 519.12(H), substantial, rather than strict, compliance is sufficient.

{¶ 36} Election laws, however, are "mandatory and require strict compliance and * * * substantial compliance is acceptable only when an election provision expressly states that it is." *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 476, 764 N.E.2d 971. Because the pertinent provisions of R.C. 519.12(H) do not permit substantial compliance, strict compliance is warranted. See, e.g., *State ex rel. Oberer Dev. Co. v. Montgomery Cty. Bd. of Elections* (Sept. 13, 1996), Montgomery App. No. 16075, 1996 WL 532335, *4 ("although [R.C. 519.12] expressly provides for the possibility of substantial compliance with the prescribed form of the petition, it does not expressly provide for substantial compliance with the accompanying map requirement").

{¶ 37} Respondents correctly argue that R.C. 519.12(H) should be liberally construed to permit the exercise of the power of referendum by township electors even without a constitutional provision applicable to townships comparable to that applicable to municipalities in Section 1f, Article II, Ohio Constitution. See *S.I. Dev. & Constr., L.L.C. v. Medina Cty. Bd. of Elections*, 100 Ohio St.3d 272, 2003-Ohio-5791, 798 N.E.2d 587, ¶ 22.

{¶ 38} But we nevertheless strictly construe applicable requirements for initiative and referendum, even in cases involving municipalities. See *State ex rel. Commt. for the Proposed Ordinance to Repeal Ordinance No. 146–02, W. End Blight Designation v. Lakewood,* 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362 (initiative petition); *State ex rel. Barletta v. Fersch,* 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452 (referendum petitions).

{¶ 39} Accordingly, Citizens was required to strictly comply with the referendum-petition requirements of R.C. 519.12(H), including requirements for a "brief summary" of the zoning resolution and an accompanying "appropriate map."

### R.C. 519.12(H): Brief–Summary Requirement

{¶ 40} R.C. 519.12(H) specifies that each part of a petition seeking a referendum on a township zoning amendment "shall contain the number and the full and correct title, if any, of the zoning amendment resolution, motion, or application, furnishing the name by which the amendment is known and a *brief summary of its contents.*" (Emphasis added.)

{¶ 41} "The phrase 'brief summary of its contents' refers to the zoning resolution passed by the township trustees." *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections* (1997), 80 Ohio St.3d 176, 179, 685 N.E.2d 502. The zoning resolution here—Resolution 2004–10—was not adopted as a separate written document, like Resolution R2002–08, but was instead reflected in the transcript of the board of township trustees' December 9, 2004 hearing as the passage of an oral motion to "approve the application as presented by the zoning commission." This resolution did not itself contain the nature of the zoning amendment or the proposed uses "as presented by the zoning commission."

{¶ 42} Respondents contend that Citizens' summary of Resolution 2004–10 was in fact more detailed than the resolution itself and that consequently, Citizens should not be penalized for not specifying proposed uses that the resolution itself did not contain.

{¶ 43} It is true that when a referendum petition's summary of a resolution contains substantially the same wording as the resolution itself, we have held that the summary complies with the statutory requirement, even when the summary fails to include a statement regarding the meaning of zoning classifications, the purpose of the zoning change, or the uses specified in the development plan approved by the resolution. See *State ex rel. C.V. Perry & Co. v. Licking Cty. Bd. of Elections* (2002), 94 Ohio St.3d 442, 445, 764 N.E.2d 411 ("We will not penalize the township electors' attempt to exercise their right of referendum [by] summarizing the resolution with substantially the same wording as the resolution itself"); see, also, *State ex rel. Rife v. Franklin Cty. Bd. of Elections* (1994), 70 Ohio St.3d 632, 634, 640 N.E.2d 522, construing the comparable R.C. 303.12(H)

summary requirement for referenda on county zoning resolutions ("We fail to see how Resolution No. 267–94 could be accurately and unambiguously summarized with information the resolution itself did not contain").

{¶ 44} Citizens' referendum petition, however, does not simply summarize Resolution 2004–10 in the same words used in the resolution. See *O'Beirne,* 80 Ohio St.3d at 180, 685 N.E.2d 502 ("Inclusion of the full text of the amendment of the ordinance generally satisfies the 'brief summary' requirement of R.C. 519.12(H)"). Instead, the petition goes further and attempts to summarize the application presented by the zoning commission, which was referred to in the resolution.

{¶ 45} This additional language must therefore satisfy the applicable test. See *O'Beirne,* 80 Ohio St.3d 176, 685 N.E.2d 502; *Shelly & Sands, Inc. v. Franklin Cty. Bd. of Elections* (1984), 12 Ohio St.3d 140, 12 OBR 180, 465 N.E.2d 883 (construing R.C. 303.12(H)); and *Olen Corp. v. Franklin Cty. Bd. of Elections* (1988), 43 Ohio App.3d 189, 541 N.E.2d 80, in which the referendum petition summaries contained language not included in the resolutions.

{¶ 46} Under the applicable test, "[t]he summary must be accurate and unambiguous; otherwise, the petition is invalid and the subject resolution will not be submitted for vote." *S.I. Dev. & Constr.,* 100 Ohio St.3d 272, 2003-Ohio-5791, 798 N.E.2d 587, ¶ 17. Thus, " '[i]f the summary is misleading, inaccurate, or contains material omissions which would confuse the average person, the petition is invalid and may not form the basis for submission to a vote.' " *State ex rel. Hamilton v. Clinton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 556, 559, 621 N.E.2d 391, quoting *Shelly & Sands,* 12 Ohio St.3d at 141, 12 OBR 180, 465 N.E.2d 883, both construing R.C. 303.12(H); see, also, *E. Ohio Gas Co. v. Wood Cty. Bd. of Elections* (1998), 83 Ohio St.3d 298, 301, 699 N.E.2d 916, quoting *Hamilton,* 67 Ohio St.3d at 562, 621 N.E.2d 391 (" 'Referendum petitions have been held invalid for conveying a confusing or mistaken impression as to the effect of a zoning resolution' ").

{¶ 47} The summary here contains material omissions that could have conveyed the mistaken impression to petition signers that they were requesting a vote on the same rezoning that had previously been defeated.

{¶ 48} First, the summary is misleading because it suggests that only the uses that had been specified in the previous, defeated resolution (residential building lots, a golf course, open spaces, and land set aside for schools) were included in Resolution 2004–10. In fact, Citizens omitted all of the material uses that NorthStar had specifically included in its second application to emphasize the difference between that application and its first one, e.g., 191.6 acres of farm-preservation area, 103.6 acres of passive-recreation area, and 25 acres for a township hall, all deeded to the township.

{¶ 49} Second, the summary is misleading because it fails to disclose the number of residential building lots for the rezoning approved by Resolution 2004–10. That number—653—was expressly noted in the development agreement because it represented a decrease from the 723 lots specified in the defeated resolution and was the product of NorthStar's attempts to satisfy the voters' and the township zoning commission's concerns. Citizens had included the number of lots in the summary of their referendum petition regarding Resolution R2002–08, but omitted the new reduced number in their petition summary of Resolution 2004–10.

{¶ 50} The fact that the same petitioners who had filed the referendum petition to the defeated resolution included substantially the same language in their petition summary for the new resolution, without including the additional uses specified in the development agreement, evidences an attempt to mislead or confuse petition signers into believing that the new resolution was the same as the defeated resolution.

{¶ 51} Respondents do not dispute this conclusion and instead argue that "[e]ven if the petitions do convey that impression [that Resolution 2004–10 is the same as Resolution R2002–08], the petitions were not misleading and do not contain material omissions that in any manner are legally relevant." They thus contend that the previous referendum petition is irrelevant to the legal issue of the sufficiency of the resolution summary in Citizens' petition challenging the new resolution.

{¶ 52} Respondents are mistaken. The dispositive issue is "whether the language [of the summary] itself *coupled with the actual existing circumstances* is misleading to the average voter utilizing an objective standard." (Emphasis added.) *Olen,* 43 Ohio App.3d at 193, 541 N.E.2d 80. Therefore, the circumstances surrounding the rezoning *are relevant* to the determination of whether petitioners complied with the summary requirement of R.C. 519.12(H).

{¶ 53} In at least one previous case, we relied on pertinent history surrounding a referendum petition in determining whether a board of elections clearly disregarded R.C. 519.12(H) and applicable precedent. In *E. Ohio Gas,* 83 Ohio St.3d 298, 699 N.E.2d 916, we granted a writ of prohibition to prevent a board of elections from submitting a zoning amendment to township electors. We held that the referendum petition's summary of the zoning resolution violated R.C. 519.12(H) because, although it correctly stated that the property would be rezoned from agricultural district to planned industrial district, it included only a portion of the landowner's stated reason for the rezoning. Id. at 301, 699 N.E.2d 916.

{¶ 54} The summary in the petition in that case omitted the additional language specified by the landowner in its application that the zoning be in

conformance with the requirements for a planned area for industrial growth. Id. at 301, 699 N.E.2d 916. In granting the writ, we noted that the landowner had previously withdrawn an earlier application for rezoning from agricultural district to industrial district "due to the concerns of the township trustees and citizens over permitting industrial development without significant oversight by the township." Id. at 298, 699 N.E.2d 916. In its new application, the landowner emphasized the change to a *planned* industrial district, which permitted industrial development subject to township oversight and control. Id. at 301, 699 N.E.2d 916.

{¶ 55} Similar to the landowner in *E. Ohio Gas*, NorthStar modified its initial rezoning proposal, which had been defeated by the referendum requested by Citizens, in order to address concerns of township residents. But by specifying in the petition's summary of the new resolution only the uses that had previously been included in the summary of the defeated resolution and not including the new uses, Citizens conveyed the false impression that Resolution 2004–10 was the same as Resolution R2002–08.

{¶ 56} In *Hamilton*, 67 Ohio St.3d at 561, 621 N.E.2d 391, we noted that although the county zoning resolution that was the subject of a referendum petition merely stated that the property would " 'be used for purposes substantially conforming to the * * * development plan, as amended,' " "adequate notice arguably require[d] [the referendum petitioners] to go further and summarize provisions the resolution incorporate[d]." We emphasized that the petitioners had "specified other uses * * * that [the zoning] [r]esolution * * * did not specify on its face." Id.

{¶ 57} Like the referendum petition in *Hamilton*, the referendum petition here specified other uses not contained on the face of the resolution. The summary is thus misleading because it suggests that only the uses that were included in the summary, i.e., those uses that had been proposed in the defeated resolution (residential building lots, a golf course, open spaces, schools), were included in the new resolution. Citizens could have avoided this deception by either including all of the material proposed uses set forth in the development agreement or excluding all of the uses. Petition signers may have been misled by Citizens' choice of a middle ground, noting only the previous proposed uses and omitting the new proposed uses.

{¶ 58} Respondents' reliance on *C.V. Perry*, 94 Ohio St.3d 442, 764 N.E.2d 411, and *State ex rel. DiCarlo v. Clermont Cty. Bd. of Elections*, Clermont App. No. CA2003–09–077, 2003-Ohio-5716, 2003 WL 22427812, to support their assertion that the writ should be denied is misplaced. In *C.V. Perry*, the petition summary that the court found sufficient "contained the same information as the resolution it summarized." Id. at 445, 764 N.E.2d 411. In *DiCarlo*, the petition summary

upheld by the court of appeals did not contain any of the 12 conditions imposed by the township zoning commission and approved by township trustees. Unlike the petition summary in *C.V. Perry,* Citizens' summary did not contain the same information as Resolution 2004–10; instead, the summary listed only those development-agreement uses that had been contained in the defeated resolution and omitted the new uses stated in the development agreement. And unlike the petition summary in *DiCarlo,* Citizens' summary included some uses and excluded others.

{¶ 59} Therefore, we find that the language of the summary conveyed a false impression as to the effect of Resolution 2004–10, especially in light of the surrounding circumstances, and thus the summary does not comply with R.C. 519.12(H). See *E. Ohio Gas,* 83 Ohio St.3d at 301, 699 N.E.2d 916.

### R.C. 519.12(H): Appropriate Map

{¶ 60} R.C. 519.12(H) also requires that the referendum petition be "accompanied by an appropriate map of the area affected by the zoning proposal." *Oberer Dev. Co.,* Montgomery App. No. 16075, 1996 WL 532335, at *4 ("the legislative requirement that the map accompany the petition when filed with the board of township trustees * * * is plainly mandatory").

{¶ 61} In construing the "appropriate map" requirement of R.C. 519.12(H), our paramount concern is the legislative intent in enacting the statute. *State ex rel. Lee v. Karnes,* 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23. To determine this intent, "we first review the statutory language, reading words and phrases in context and construing them according to the rules of grammar and common usage." *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21; R.C. 1.42.

{¶ 62} "Appropriate" means "specially suitable." Webster's Third New International Dictionary (2002) 106.

{¶ 63} A map accompanying a referendum petition should be considered appropriate or suitable for purposes of R.C. 519.12(H) if it does not mislead the average person about the area affected by the zoning resolution. See, e.g., *In re Appeal of Strader* (May 2, 1988), Delaware App. No. 87–CA–21, 1988 WL 42630, *6 ("We agree with the Board of Elections and the Common Pleas Court that the map [accompanying the referendum petition] was in no way misleading").

{¶ 64} The map accompanying Citizens' referendum petition is misleading because within the area affected by the resolution, which the petitioners outlined on the map, are two notations that some of the property is located in Berkshire Township, but the map does not indicate the boundary between Berkshire and Kingston Townships.

{¶ 65} Petition signers could have reasonably, but mistakenly, concluded from the map that the area being rezoned by the resolution included property located in Berkshire Township. Although Citizens claimed to have used a reproduction of a map from the county map room, the county maps delineated the boundary between Kingston and Berkshire Townships. In fact, even the map that Citizens attached to its previous referendum petition indicated the boundary between the townships. Citizens' failure to indicate the boundary evidences an intent to mislead petition signers.

{¶ 66} Thus, Citizens also failed to comply with the "appropriate map" requirement of R.C. 519.12(H).

### Conclusion

{¶ 67} For the foregoing reasons, we hold that the board of elections abused its discretion and clearly disregarded applicable law by denying the protest and placing the resolution on the ballot. Our duty to liberally construe referendum provisions does not require a different result. " '[E]ven under the most liberal construction, the record in this case indicates that the petitions circulated * * * were prepared in a manner which failed to meet the petition form requirements contained in R.C. 519.12, and that the petitions could have substantially misled those persons who signed them.' " *E. Ohio Gas,* 83 Ohio St.3d at 302, 699 N.E.2d 916, quoting *Markus v. Trumbull Cty. Bd. of Elections* (1970), 22 Ohio St.2d 197, 200, 51 O.O.2d 277, 259 N.E.2d 501. If we were to uphold the board's decision, we would be condoning the acts of referendum petitioners who successfully defeated a previous zoning amendment and then summarized a significantly modified amendment in such a way as to mislead township electors into believing that the new amendment was identical or substantially similar to the earlier amendment. We are not persuaded that R.C. 519.12(H) permits this absurd result.

{¶ 68} Consequently, the petition failed to comply with the summary and map requirements of R.C. 519.12(H). Based on the foregoing, we grant relators a writ of prohibition to prevent the board of elections from submitting Resolution 2004–10 to the township electorate on November 8, 2005. We dismiss relators' mandamus claim and deny relators' motion to vacate our entry granting Citizens' motion to intervene and their alternative motion to strike Citizens' answer.

*Judgment accordingly.*

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

Chester, Willcox & Saxbe, L.L.P., Charles R. Saxbe, Donald C. Brey, and Timothy S. Horton, for relators.

David A. Yost, Delaware County Prosecuting Attorney, and William J. Owen and Christopher D. Betts, Assistant Prosecuting Attorneys, for respondents.

Moots, Carter & Hogan and Christopher E. Hogan, for intervening respondent.