[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Barney v. Union Cty. Bd. of Elections,* Slip Opinion No. 2019-Ohio-4277.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-4277

THE STATE EX REL. BARNEY ET AL. *v.* UNION COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Barney v. Union Cty. Bd. of Elections,* Slip Opinion No. 2019-Ohio-4277.]**

*Prohibition—Elections—R.C. 519.12(H)—Zoning-referendum petition was valid and board of elections correctly denied protest—Writ denied.*

(No. 2019-1296—Submitted October 11, 2019—Decided October 17, 2019.)

IN PROHIBITION.

_____

**Per Curiam.**

**{¶ 1}** In this expedited election case, relators, Bryan R. Barney and Walbonns, L.L.C., ("the protesters"), seek a writ of prohibition to prevent respondent, the Union County Board of Elections, from placing a township zoning referendum on the November 5, 2019 general-election ballot. We deny the writ.

## I. Background

**{¶ 2}** On January 28, 2019, Paragon Building Group, Ltd., filed an application to rezone approximately 210.62 acres of land in Jerome Township, Union County. The property in question is currently zoned RU-Rural Residential District and SRE-Special Recreation District. The application sought to change the zoning classification to PD-Planned Development District. Upon its filing, the zoning application was designated "PD 19-130."

**{¶ 3}** In March 2019, the Jerome Township Zoning Commission voted 5-0 to recommend approval of PD 19-130 to the Jerome Township Board of Trustees. The board of trustees held four public hearings on the application.

**{¶ 4}** On July 2, the trustees adopted Resolution No. 19-066 by a 2-1 vote. The resolution approved application PD 19-130, subject to five conditions (referred to as "modifications"). Those modifications were set forth on a separate page labeled "Attachment 1":

1. Increase to a 40-foot minimum setback for lots having shared access drives along Crottinger Road.

2. Remove at least 5 lots from south property (wooded area), adjacent to the neighbor/residence at 10420 Crottinger Road, with the option at Applicant's election to redistribute or re-place any of those 5 lots elsewhere in the development at Final Development Plan.

3. Include additional language in the Development Text to state plainly that any golf course or other use operated or conducted on the Open Space shall at all times be open to the public.

4. As proposed by the Applicant, developer to pay a $500 per lot supplemental zoning review fee, payable at time of Township zoning approval.

5. Prior to construction, the execution and recording of an option contract for the golf course area substantially similar to the one prepared and proposed by the Applicant dated June 12, 2019.

{¶ 5} On July 29, a petition was filed with the Jerome Township Fiscal Officer, seeking to place a referendum concerning the zoning amendment on the November ballot. Atop each part-petition form, in the space designated for the "[n]ame and number of the proposal, if any," the circulators wrote:

Amendment of Zoning Resolution to rezone approx. 210.62 acres from Rural Residential District (RU) and Special Recreation District (SRE) to Planned Development District (PD). Resolution 19-066.

{¶ 6} In the space provided for a summary of the proposed zoning amendment, the following information was provided:

A resolution, 19-066, approving zoning amendment PD 19-130 to rezone approximately 210.62 +/- acres located approximately 2,100 feet north-west of the intersection of Taylor Road and Industrial Parkway having a current address of 10897 Industrial Parkway, Marysville, Ohio 43040 ("Property"), from Rural Residential District (RU) and Special Recreation District (SRE) to Planned Development District (PD) allowing for a residential community consisting of up to 378 single-family homes and open space areas to be known as "Rolling Meadows."
The attached exhibits provide more details.
Resolution 19-066 (Exhibit 1)
List of Affected Parcels (Exhibit 2)

Regional Context Map (Exhibit 3)

Illustrative Master Plan (Exhibit 4)

Exhibit 1 included the "Attachment 1" that set forth the five modifications imposed by the board of trustees. However, the modifications were not described in the summary, nor did the summary indicate that there were any modifications.

{¶ 7} On August 6, the board of trustees certified the petition to the Union County Board of Elections to determine the petition's sufficiency and validity. One week later, the board of elections determined that the petition contained a sufficient number of valid signatures and certified the issue to the ballot.

{¶ 8} Three days later, on August 16, the protesters filed a protest against the petition with the board of elections. They alleged that they each own two parcels of land that would be subject to the proposed zoning amendment. Their protest letter identified four alleged defects in the petition: (1) the petition incorrectly identified the number of the zoning-amendment application, (2) the petition incorrectly identified the full and correct title of the zoning-amendment application, (3) the petition incorrectly identified the name by which the zoning amendment is known, and (4) the petition's brief summary contained material omissions.

{¶ 9} The board of elections conducted a hearing on the protest on September 19, at which it heard testimony from nine witnesses and received documents into evidence, including an affidavit from one of the township trustees who was unable to attend for medical reasons. At the conclusion of the hearing, the board voted to deny the protest, allowing the referendum to appear on the ballot.

## II. Procedural history

{¶ 10} On September 23, the protesters filed a complaint for a writ of prohibition. Because they filed their complaint within 90 days of the relevant election, the case was automatically expedited pursuant to S.Ct.Prac.R.

12.08(A)(1). The matter was fully briefed. The only evidence in the record was submitted by the protesters. We also received an amicus brief from the Ohio Home Builders Association supporting the issuance of a writ.

### III. Legal analysis

{¶ 11} Three elements are necessary for a writ of prohibition to issue: the exercise of judicial or quasi-judicial power, the lack of legal authority for the exercise of that power, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Tam O'Shanter v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 14.

{¶ 12} The first and third elements are met. R.C. 3501.39(A) requires a board of elections to conduct a quasi-judicial hearing on a petition protest. *See State ex rel. Miller Diversified Holdings, L.L.C. v. Wood Cty. Bd. of Elections*, 123 Ohio St.3d 260, 2009-Ohio-4980, 915 N.E.2d 1187, ¶ 15. A board of elections exercises quasi-judicial authority when it makes a decision regarding a protest after a mandatory hearing that includes sworn testimony. *See Christy v. Summit Cty. Bd. of Elections*, 77 Ohio St.3d 35, 37, 671 N.E.2d 1 (1996). And due to the proximity of the November election, the protesters have no adequate remedy at law. *See State ex rel. Combs v. Greene Cty. Bd. of Elections*, __Ohio St.3d__, 2019-Ohio-4110, __N.E.3d__, ¶ 6.

{¶ 13} This case turns on the second element of the prohibition analysis: whether the board of elections lacked authority to place the petition on the ballot. To answer this question, we "must determine whether the board acted fraudulently or corruptly, abused its discretion, or clearly disregarded applicable law." *State ex rel. Brown v. Butler Cty. Bd. of Elections*, 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 23. There is no allegation that the board acted "fraudulently or corruptly."

### A. The requirements of R.C. 519.12(H)

{¶ 14} Each part-petition calling for a referendum on a zoning amendment "shall contain the number and the full and correct title, if any, of the zoning amendment resolution, motion, or application, furnishing the name by which the amendment is known and a brief summary of its contents." R.C. 519.12(H). The statute thus imposes "four distinct requirements" regarding what a zoning-referendum petition must contain:

(1)  "the *number* of * * * the zoning amendment resolution, motion, or application,"

(2)  "the full and correct *title*, if any, of the zoning amendment resolution, motion, or application,"

(3)  "the *name* by which the amendment is known," and

(4)  "a brief *summary* of the contents."

(Emphasis added.) *State ex rel. Quinn v. Delaware Cty. Bd. of Elections*, 152 Ohio St.3d 568, 2018-Ohio-966, 99 N.E.3d 362, ¶ 26, quoting R.C. 519.12(H).

{¶ 15} The requirements of R.C. 519.12(H) demand strict compliance. *Quinn* at ¶ 30. The protesters contend that the petition did not satisfy *any* of these requirements and therefore the board of elections abused its discretion and clearly disregarded applicable law by permitting the referendum to appear on the ballot.

### B. The number of the zoning-amendment application

{¶ 16} The requirement of R.C. 519.12(H) that the petition must provide the number of the zoning-amendment resolution, motion, *or* application appears to be written in the disjunctive. As we explained in *Quinn*, the three possibilities actually mirror the three methods by which a zoning amendment may be initiated. *Id*. at ¶ 29. Under R.C. 519.12(A)(1), amendments to a township zoning resolution may be initiated in one of three ways, depending on who proposes the change: (1)

by motion of the township zoning commission, (2) by the passage of a resolution by the board of township trustees, or (3) by the filing of an application by one or more of the owners or lessees of the affected property. *Tam O'Shanter*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, at ¶ 18. The appropriate number and title to use on the petition "depends on the method of initiation," *Quinn* at ¶ 29. When, as in this case, the zoning amendment is proposed by an application, R.C. 519.12(H) requires the petition to contain the number and title of the application. *See Quinn* at ¶ 29.

{¶ 17} At the hearing before the board of elections, the administrative assistant to the township fiscal officer testified that the application number was PD 19-130. The parties agree that PD 19-130 was the correct number to use. But they disagree over whether the part-petitions satisfied R.C. 519.12(H).

{¶ 18} The name and number of the proposal filled in at the top of each part-petition referred to "Resolution 19-066," which was the number of the resolution adopted by the board of trustees. Under the rule set forth in *Quinn*, reference to the resolution number rather than the application number did not satisfy the statute in this case because the zoning amendment was initiated by an application. However, lower on the same first page of each part-petition, the summary referred to "[a] resolution, 19-066, approving zoning amendment PD 19-130." Based on this language, the board of elections concluded that the petition complied with the statute: the number of the application appeared on the face of the part-petitions.

{¶ 19} We agree. R.C. 519.12(H) requires each part-petition to "contain" this information. But the statute does not specify *where* on the face of the part-petition the information must appear. The part-petitions therefore strictly complied with the statutory requirement that they contain the number of the zoning application.

{¶ 20} The petitioners used Form No. 6-O, promulgated by the secretary of state, which instructs petitioners to write the "[n]ame and number of the proposal,

if any," on the top of the petition. The secretary's Form No. 6-O tracks the example provided in R.C. 519.12(H). That statute indicates that the "form of a petition calling for a zoning referendum and the statement of the circulator shall be *substantially* as follows." (Emphasis added.) Election statutes are mandatory "*unless* there is language allowing substantial compliance." (Emphasis added.) *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 15. Thus, although the required information must appear somewhere on the face of the petition, strict compliance is not required with respect to the layout of the petition form. *See State ex rel. Simonetti v. Summit Cty. Bd. of Elections*, 151 Ohio St.3d 50, 2017-Ohio-8115, 85 N.E.3d 728, ¶ 26 (R.C. 3513.261, which states that a nominating petition "shall be substantially in the form prescribed in this section," requires only substantial compliance regarding the form of the nominating petition).

{¶ 21} The protesters reply to this analysis by noting that the secretary has a legal duty under R.C. 3501.05(G) to prescribe forms for use by petition committees. They then argue that by selecting this format for Form No. 6-O, the secretary interpreted R.C. 519.12(H) as requiring circulators to place the required information on the top of the form, and they ask us to defer to the secretary's interpretation of state election law. But in adopting the model form, the secretary did not purport to interpret the law as requiring strict compliance with the *form*. Thus, this is not a case in which we need to decide what deference, if any, to give to the secretary's interpretation of an election statute.

{¶ 22} The only question is whether the part-petitions *substantially* complied with the first requirement of R.C. 519.12(H). When considering questions of substantial compliance, we ask whether the requirement at issue " 'serves a public interest and a public purpose.' " *Simonetti* at ¶ 27, quoting *Stern v. Cuyahoga Cty. Bd. of Elections*, 14 Ohio St.2d 175, 180, 237 N.E.2d 313 (1968). Certainly, the public interest requires a part-petition to contain sufficient basic

8

information to notify potential signers what the petition seeks to do. But the protesters have "assert[ed] no logical or reasonable proposition, based upon a public purpose, public policy or public interest for invalidating this part-petition upon [the] technical ground," *Stern* at 179, that the application number appeared in the summary section, rather than on the top of the form.

{¶ 23} We therefore agree with the decision of the board of elections to reject the protesters' first argument for invalidating the part-petitions.

### C. The title of the zoning-amendment application

{¶ 24} R.C. 519.12(H) also requires the petition to contain the full and correct title, if any, of the zoning-amendment application. The top of the part-petitions identified the title as:

> Amendment of Zoning Resolution to rezone approx. 210.62 acres
> from Rural Residential District (RU) and Special Recreation District
> (SRE) to Planned Development District (PD). Resolution 19-066.

The protesters describe this as a "made up" title and fault the petition for failing to use the full and correct title. But they *never identify what the correct title is*. They neglected to place the actual application into evidence.[1] Nor is there an affidavit or testimony identifying the correct title of the application. Instead, they refer to multiple exhibits they submitted to establish that Jerome Township never referred to the application by the title used in the part-petitions.

{¶ 25} The record contains what purport to be the agendas for three meetings of the Jerome Township Board of Trustees, dated May 6, May 21, and June 25, 2019. Each document indicates that the topic for consideration will be:

---

1. The record contains only what appears to be a single page from the application, a form executed by the property owner authorizing Paragon Building Group to act as its agent.

> **Public Hearing—Application #PD #19-130 submitted by Laura MacGregor Comek, Attorney for Paragon Building Group Ltd.—The proposed development will be known as - "Rolling Meadows"**

(Boldface sic.) The board of trustees' meeting minutes for those same dates refer to:

> **Application for a Zoning Amendment (PD 19-130)**
> **Submitted by Paragon Building Group Ltd.**
> **Rural Residential (RU) and Special Recreation (SR) to Planned Development (PD)**
> **(Approximately 210.62+/- acres)**
> **Parcel Numbers 14-00050060000, 14-00050070000, 15-00040180000, 15-00040184000, 15-00040181000, 15-00040183000, 14-00050030000, and 15-00040044000**

(Boldface sic.) The record also includes an agenda for the meeting on July 2, 2019, which contains a line item designated simply "Rolling Meadows – Vote." The meeting minutes for that date indicate approval of "the application submitted by Paragon Building Group, Ltd. PD 19-130 to rezone from Rural Residential and Special Recreation to Planned Development, approximately 210.62+/- acres * * *." Elsewhere, the same minutes report a discussion of "a zoning amendment submitted by Paragon Building Group, Ltd., referred to as Rolling Meadows." On August 6, the board of trustees considered the referendum petition, calling the underlying application "the Rolling Meadows project, application for a zoning amendment PD 19-130."

**{¶ 26}** None of these documents establish what the actual "correct title" of the application is. In some respects, the descriptions used in these documents are quite different from one another. Some documents, for example, include the phrase "Rolling Meadows." But that phrase is absent from many of the meeting minutes, including from the line item memorializing the board's approval of the application. Instead, the meeting minutes identify the application by the affected parcel numbers, but that information is not included elsewhere.

**{¶ 27}** R.C. 519.12(H) requires the petition to contain the full and correct title, "if any." The statute thus contemplates the possibility that an application will not have a title. Based on the evidence in the record, there is reason to believe that this is the case here: even the township resolution itself did not refer to the name of the application it was approving: rather, it "described" the zoning-amendment case as:

> an application submitted by Laura MacGregor Comek, Attorney for Paragon Building Group, Ltd., seeking the rezoning of a 210.62 +/- acre tract located approximately 2,100 feet northwest of the intersection of Taylor Road and Industrial Parkway having a current address of 10897 Industrial Parkway, Marysville, Ohio 43040, from Rural Residential District (RU) and Special Recreation District (SRE) to Planned Development District (PD) pursuant to Chapter 5 of the Jerome Township Zoning Resolution. The proposed development is a residential community consisting of single-family homes and open space areas and will be known as "Rolling Meadows."

**{¶ 28}** The protesters, as the party seeking the issuance of a writ, must prove their entitlement to relief by clear and convincing evidence. *State ex rel. Federle*

*v. Warren Cty. Bd. of Elections*, 156 Ohio St.3d 322, 2019-Ohio-849, 126 N.E.3d 1091, ¶ 10. Here, that means showing that the application did in fact have a title that the petitioners should have used. But the protesters submitted *no* evidence establishing a title.

{¶ 29} The board of elections correctly rejected the protesters' second argument for invalidating the part-petitions.

### D. The name by which the zoning-amendment application is known

{¶ 30} R.C. 519.12(H) requires a petition to identify the name by which the amendment is known. The protesters contend that the application was well known as "Rolling Meadows" and that the part-petitions were defective because they did not identify the proposal by that name or by "PD 19-130." But both of those designations appeared on the face of the part-petitions, in the summary section. The protesters are making the same argument here as they did regarding the first requirement (analyzed in Section A, above): that the information must appear at the top of the form. As discussed previously, R.C. 519.12(H) requires the information to appear on the part-petition but does not mandate where it must appear. For these reasons, the board of elections correctly rejected the protesters' third argument for invalidating the part-petitions.

### E. The "brief summary" omitted material information

{¶ 31} R.C. 519.12(H) requires each part-petition to contain a "brief summary" of the contents of the zoning amendment. *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections*, 80 Ohio St.3d 176, 179, 685 N.E.2d 502 (1997) ("The phrase 'brief summary of its contents' refers to the zoning resolution passed by the township trustees"). The protesters contend that the petition omitted material information from the "brief summary" section—specifically, the five modifications made to the proposal by the board of trustees and incorporated into the resolution as Attachment 1.

**{¶ 32}** The purpose of the summary is " 'to present fairly and accurately the question or issue to be decided in order to assure a free, intelligent and informed decision by the persons to whom [a petition for referendum] is presented.' " *State ex rel. Hamilton v. Clinton Cty. Bd. of Elections*, 67 Ohio St.3d 556, 559, 621 N.E.2d 391 (1993), quoting *Nunneker v. Murdock*, 9 Ohio App.3d 73, 77, 458 N.E.2d 431 (1st Dist.1983) (considering the statute concerning amendments to county zoning resolutions). The summary must therefore be "accurate and unambiguous." *S.I. Dev. & Constr. v. Medina Cty. Bd. of Elections*, 100 Ohio St.3d 272, 2003-Ohio-5791, 798 N.E.2d 587, ¶ 17. " '[I]f the summary is misleading, inaccurate, or contains material omissions which would confuse the average person, the petition is invalid and may not form the basis for submission to a vote.' " *State ex rel. Gemienhardt v. Delaware Cty. Bd. of Elections*, 109 Ohio St.3d 212, 2006-Ohio-1666, 846 N.E.2d 1223, ¶ 38, quoting *Shelly & Sands, Inc. v. Franklin Cty. Bd. of Elections*, 12 Ohio St.3d 140, 141, 465 N.E.2d 883 (1984).

**{¶ 33}** At the protest hearing before the board of elections, the chairman conceded that the five modifications were material:

> I do agree with the Protesters that those five conditions are material and that they had to be in the Referendum Petition. I think anyone who saw the Petition would have to know that the change in zoning was modified by those five provisions.

But the chairman considered it sufficient that the five modifications were present as an attachment rather than as part of the brief summary. The other board members agreed.

**{¶ 34}** In *O'Beirne*, we held that inclusion of the full text of an ordinance amendment usually satisfies the "brief summary" requirement. 80 Ohio St.3d at 180, 685 N.E.2d 502. In this case, it did. The petition here contained the entire

zoning amendment, including the full text of the modifications. Further, the zoning-referendum petition was brief—the complete zoning amendment including the full list of amendments was only two pages long. Under these facts, we conclude that the brief summary requirement was satisfied. The protesters' objection, once again, is not that the petition lacked essential information but that the information was not placed in a particular location on the form. We reiterate that R.C. 519.12(H) requires strict compliance as to the contents of a zoning petition but allows for substantial compliance as to its form. Here, we conclude that under the facts of this case, the petition substantially complied with the requirements of the law.

**{¶ 35}** The board of elections correctly rejected the protesters' fourth argument for invalidating the part-petitions.

### IV. Conclusion

**{¶ 36}** For the reasons discussed, we conclude that the board of elections correctly denied the protest. We therefore deny the writ of prohibition.

Writ denied.

KENNEDY, FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

O'CONNOR, C.J., concurs, with an opinion.

FISCHER, J., concurs, with an opinion.

_____

**O'CONNOR, C.J., concurring.**

**{¶ 37}** I concur with the judgment of the court. I write separately to emphasize the limited scope of today's holding. The court does *not* hold that the complete text of a zoning amendment, attached as an exhibit to a part-petition, will satisfy the "brief summary" requirement of R.C. 519.12(H) *in all cases*.

**{¶ 38}** All the court says today is that on these facts, the petition summary substantially complied with R.C. 519.12(H) because all the material information was referred to therein and was easily accessible to potential signatories. Critical

14

to this conclusion is the fact that the zoning-referendum petition was so brief: the complete zoning amendment, including the full list of modifications, was a mere two pages long.

{¶ 39} Whether there has been strict compliance with an election-law requirement is a question of fact. *See Olen Corp. v. Franklin Cty. Bd. of Elections*, 43 Ohio App.3d 189, 198, 541 N.E.2d 80 (10th Dist.1988). A different set of facts, involving more voluminous documents or the absence of any reference to those documents in the summary, might yield a different result. But that scenario is not the one before us today.

{¶ 40} Under the facts presented, the petition complied with the requirements of R.C. 519.12(H). I therefore concur with the judgment of the court to deny the writ of prohibition and permit the referendum to appear on the November ballot.

_____

**FISCHER, J., concurring.**

{¶ 41} It is a fundamental and time-tested principle that "the people are the only legitimate fountain of power, and it is from them that * * * the several branches of government [derive] their power," Madison, The Federalist No. 49 at 313-314 (Clinton Rossiter Ed.1961).

{¶ 42} Consistent with that principle, the Ohio Constitution reserves some of the legislative power for the citizens of this state by giving them the right to adopt or reject legislative acts at the polls through initiatives and referenda. Article II, Section 1, Ohio Constitution. This includes the right of citizens at the local level to reject zoning ordinances. *See id.* at Section 1(f); *Hilltop Realty, Inc. v. S. Euclid*, 110 Ohio App. 535, 164 N.E.2d 180 (8th Dist.1960).

{¶ 43} This is a case that put that right to the test by asking this court to decide whether Ohio citizens should be denied the opportunity to exercise that right because, among other things, their brief summary was too brief. In my opinion,

denying the writ was the proper thing to do given these facts and the system of government established under the Ohio Constitution.

**{¶ 44}** Today, thanks to the decision of this court, the right to referendum is more than illusory and Alexis de Tocqueville would still have something to admire in America in 2019.

**{¶ 45}** For these reasons, I concur in the court's opinion.

_____

McTigue & Colombo, L.L.C., J. Corey Colombo, Donald J. McTigue, Derek S. Clinger, and Ben F.C. Wallace; and Laura M. Comek Law, L.L.C., and Laura MacGregor Comek, for relators.

David W. Phillips, Union County Prosecuting Attorney, and Thayne D. Gray, Assistant Prosecuting Attorney, for respondent.

Kristen L. Sours, urging granting of the writ for amicus curiae, Ohio Home Builders Association.

_____