**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pinkston v. Delaware Cty. Bd. of Elections,* Slip Opinion No. 2023-Ohio-1060.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1060

THE STATE EX REL. PINKSTON ET AL. *v.* DELAWARE COUNTY BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pinkston v. Delaware Cty. Bd. of Elections,* Slip Opinion No. 2023-Ohio-1060.]**

*Elections—Mandamus—R.C. 519.12—Writ granted.*

(No. 2023-0332—Submitted March 27, 2023—Decided March 30, 2023.)

IN MANDAMUS.

_____

**Per Curiam Opinion announcing the judgment of the court.**

{¶ 1} Relators, Steve Pinkston and Douglas D. Martin (collectively, "Pinkston"), filed this case after respondent, Delaware County Board of Elections, sustained a protest to a township-zoning referendum petition.  The board determined that the petition failed to satisfy R.C. 519.12(H), which requires such petitions to include a "brief summary" of the contents of the zoning amendment.  Pinkston seeks

a writ of mandamus compelling the board to place the referendum on the May 2, 2023 ballot or, alternatively, the November 7, 2023 ballot.

{¶ 2} In addition to defending the board's determination, the board and intervening respondent, Highland Realty Development, argue that R.C. 519.12(H) does not allow the referendum to be placed on the November ballot. The board and Highland Realty argue that Pinkston waited too long to file this action and that it should be denied under the doctrine of laches.

{¶ 3} We grant the writ and order the board to place the referendum on the May ballot.

## I. BACKGROUND

{¶ 4} The land at issue consists of 87.7 acres in Berkshire Township, Delaware County. Highland Realty seeks to develop the land with single-family homes in a development to be known as "Plumb Creek."

{¶ 5} In May 2022, Highland Realty applied to the township zoning commission to rezone the property from "Planned Institutional District" to "Planned Residential District." The application proposed the construction of 141 homes, with a gross density of 1.6 units per acre. As originally proposed, the development would have required five "divergences" from the township's zoning code—that is, certain aspects of the proposal would not have complied with setback and lot-size, lot-width, and side-yard standards. Over the next several months, Highland Realty submitted two amended applications. The final application proposed the construction of 91 homes, for a gross density of 1.03 units per acre. As proposed in the final application, the development would not require any divergences from the zoning code. The Berkshire Township Board of Trustees approved the final application on October 10, 2022.

{¶ 6} On November 7, a referendum petition consisting of 22 part-petitions with 249 total signatures was submitted to the township. The petition included the following "brief summary" of the zoning amendment:

On October 10, 2022, the Board of Township Trustees for Berkshire Township approved the rezoning for Application #22-104—Plumb Creek, a PRD Zoning Application submitted by Highland Realty Development, 720 East Broad Street, Suite 200, Columbus, Ohio 43215 to rezone +/- 87.70 acres, Parcel numbers 41733001048000, 4173300106000, and 99999902000000, Dustin Road and 6269 Plumb Road, Galena, Ohio 43021, from Planned Institutional District (PIND) to Planned Residential District (PRD) to permit the development of single-family homes.

{¶ 7} On November 14, the board of trustees passed a resolution certifying the petition to the board of elections. *See* R.C. 519.12(H) (fourth paragraph). And on December 6, the board of elections certified that the petition contained a sufficient number of valid signatures for placement on the ballot. But on December 22, Highland Realty filed a protest with the board of elections, arguing that the petition's brief summary "is misleading, inaccurate, and contains material omissions which would confuse the average person." Among other things, Highland Realty argued that the brief summary needed to include information about the number of homes to be built and how that number compared to the number in Highland Realty's initial application.

{¶ 8} The board of elections held an evidentiary hearing on the protest on February 21, 2023. Highland Realty presented evidence that it had modified its original application by reducing the number of homes and eliminating all divergences from the township's zoning code. Highland Realty also presented evidence from two township residents, one who testified that he had been misled by a petition circulator who told him that the proposal was a "high-density" development that included "over 100 homes" and another who stated in an affidavit that he had been misled when a

circulator told him that the property would continue to be used as farmland if voters rejected the rezoning.

{¶ 9} Pinkston presented testimony from four petition circulators who collectively circulated ten of the 22 part-petitions. They all testified that a map of the proposed development was attached to the part-petitions that they had circulated and that the map provided additional details about the proposed development, including the number of homes approved, the density of the development, the minimum amount of undeveloped space, and minimum lot sizes. The evidence showed, however, that the petition filed with the township included just one map—not separate maps for each part-petition.

{¶ 10} The board of elections voted three to one to sustain Highland Realty's protest, finding that the petition's brief summary did not satisfy R.C. 519.12(H), because it "fail[ed] to adequately describe the nature of the requested zoning change and it omit[ed] the Trustees' modifications to the application."

{¶ 11} Pinkston filed this expedited election action on March 7—14 days after the board of elections' decision sustaining the protest. In the first claim for relief, Pinkston seeks a writ of mandamus ordering the board of elections to place the referendum on the May ballot. The second, alternative claim for relief seeks an order compelling the board to place the referendum on the November ballot.

## II. ANALYSIS

### A. Eligibility for the November ballot

{¶ 12} The fifth paragraph of R.C. 519.12(H) provides:

> If the board of elections determines that a petition is sufficient and valid, the question shall be voted upon at a special election to be held on the day of the next primary or general election that occurs at least ninety days after the date the petition is filed with the board of

4

township trustees, regardless of whether any election will be held to nominate or elect candidates on that day.

{¶ 13} Under this statute, the filing of the referendum petition with the township on November 7, 2022, was the event that determined the referendum's election date. The referendum election must be held "on the day of the next primary or general election that occurs at least ninety days after" that date, R.C. 519.12(H) (fifth paragraph). The next primary or general election occurring at least 90 days after November 7, 2022, is the May 2, 2023 primary election. Placement on the November ballot, therefore, is not an option under R.C. 519.12(H).

{¶ 14} Pinkston argues that placement on the November ballot would be permissible if we were to issue a writ of mandamus against the board *after* the May 2 primary election. Because we are issuing a decision before May 2, we need not address this argument.

**B. Laches**

{¶ 15} The board of elections and Highland Realty argue that Pinkston's claim should be denied under the doctrine of laches. For laches to apply, Pinkston must have unreasonably delayed without excuse commencing this action and he must have had actual or constructive knowledge that the delay would prejudice other parties. *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995). This court has applied laches in election cases because such cases require relators to exhibit "[e]xtreme diligence and promptness." *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections*, 86 Ohio St.3d 107, 113, 712 N.E.2d 696 (1999). But "a laches defense rarely prevails in elections cases." *State ex rel. Duclos v. Hamilton Cty. Bd. of Elections*, 145 Ohio St.3d 254, 2016-Ohio-367, 48 N.E.3d 543, ¶ 8.

{¶ 16} Pinkston unreasonably delayed filing this action. Pinkston waited 14 days after the board of elections sustained Highland Realty's protest to file the

complaint for a writ of mandamus and he did not present a valid excuse for the delay. *See Paschal v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 141, 142, 656 N.E.2d 1276 (1995) (applying laches based on a 9-day delay); *Polo* at 145 (17-day delay); *see also State ex rel. Vickers v. Summit Cty. Council*, 97 Ohio St.3d 204, 2002-Ohio-5583, 777 N.E.2d 830, ¶ 13 ("relators have the burden of proving that they acted with the requisite diligence").

{¶ 17} For laches to apply, however, the party asserting the defense must show that it was harmed by the delay. *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, ¶ 10. "[T]he prejudice must be material before laches will bar relief." *State ex rel. Pennington v. Bivens*, 166 Ohio St.3d 241, 2021-Ohio-3134, 185 N.E.3d 41, ¶ 26.

{¶ 18} "[C]ases in which laches is dispositive generally involve prejudice to the respondents in their statutory obligation to absentee voters to have absentee ballots printed and ready for use." *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 14. The deadline for preparing absentee ballots for the May election, as required by the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. 20302(a), was March 17. *See* R.C. 3511.04(B). Although that deadline has passed, it likely would have passed even if Pinkston had filed this case within a week of the board of elections' February 21 decision. *See State ex rel. Brinda v. Lorain Cty. Bd. of Elections*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 13; *compare State ex rel. Richardson v. Gowdy*, __ Ohio St.3d __, 2023-Ohio-976, __ N.E.3d __ (the complaint was filed on February 28 and this court issued a decision on March 24). Pinkston's delay, therefore, did not cause the board of elections to miss the March 17 deadline.

{¶ 19} The board of elections argues that it has been harmed in another way. In an affidavit that the board submitted as evidence, the board's director, Karla Herron, explained that there are no candidates or issues for the May 2, 2023 primary-election ballot in Delaware County and that the board therefore has not undertaken

*any* steps to hold an election that day. Herron stated that the board has not prepared ballots, hired or trained poll workers, secured polling locations, or conducted pre-election programming and testing of voting machines.

{¶ 20} The board's inaction and resulting unpreparedness for an election in May, standing alone, do not demonstrate the prejudice that is necessary for the defense of laches. The board may be facing significant challenges as a result of this action, but it does not necessarily follow that Pinkston's delay in filing his complaint caused those challenges. *See State ex rel. Halstead v. Jackson*, __ Ohio St.3d __, 2022-Ohio-3205, __ N.E.3d __, ¶ 19 (there must be a causal link between the delay by the relator and any harm to the respondent).

{¶ 21} But according to Herron, the board *would have* prepared to hold an election in May if this lawsuit had been filed sooner. Herron explained that two school districts primarily located in Licking County have levy issues on the May ballot affecting around 109 Delaware County voters. After the board sustained Highland Realty's protest on February 21, it held a regular meeting at which it considered whether to administer the election for that small group of voters or instead allow Licking County to accommodate them under R.C. 3503.01(B) ("When only a portion of a precinct is included within the boundaries of an election district, the board of elections may assign the electors residing in such portion of a precinct to the nearest precinct or portion of a precinct within the boundaries of such election district for the purpose of voting at any special election held in such district"). In her affidavit, Herron avers that a "major consideration for the [board] in sending their voters to Licking County was whether there were any other candidates or issues on the ballot in Delaware County, as well as the expense involved in conducting an election for so few voters." Herron further avers that "[a]t that meeting, the [board] decided to wait before sending their voters to Licking County to determine if their just-rendered decision in the Berkshire Township zoning referendum protest would be subject to a mandamus action."

{¶ 22} When no lawsuit was filed challenging the board's decision by the time of the board's next meeting—which was held nine days later, on March 2—the board passed a resolution asking that Licking County accommodate the Delaware County voters, thus leaving no candidates or issues on the May 2 ballot in Delaware County. Pinkston argues that this does not constitute prejudice to the board, because the board simply made "its own discretionary decision." But the board's evidence shows a causal link between the board's decision and Pinkston's delay—but for the delay, the board says it would have prepared to hold an election on May 2.

{¶ 23} Although the board has presented evidence identifying several things that must be accomplished before voting can begin, we note that Herron's affidavit does not state that the board cannot accomplish what it needs to for early in-person absentee voting to begin April 4. *See* R.C. 3509.01. Regardless, this court need not decide whether the situation the board finds itself in constitutes material prejudice. For laches to apply, Pinkston must have had actual or constructive knowledge that his delay would cause the alleged harm. *See Polo*, 74 Ohio St.3d at 145, 656 N.E.2d 1277. There is no evidence that Pinkston actually knew that a two-week delay in filing this lawsuit would cause the board not to prepare to hold an election in May. Nor is there sufficient evidence justifying the imputation of such knowledge to Pinkston. *See Black's Law Dictionary* 1004 (10th Ed.2014) ("Constructive knowledge" is "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person"). Laches, therefore, does not bar Pinkston's claim.

### C. Mandamus claim

{¶ 24} To be entitled to a writ of mandamus, Pinkston must prove by clear and convincing evidence that he has a clear legal right to the requested relief, that the board has a clear legal duty to provide that relief, and that he lacks an adequate remedy in the ordinary course of the law. *See State ex rel. Waters v. Spaeth*, 131

Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13.  Given the proximity of the May election, Pinkston lacks an adequate remedy in the ordinary course of the law. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18.

**{¶ 25}** As to the remaining elements, this court must find that the board of elections engaged in fraud or corruption, abused its discretion, or clearly disregarded applicable legal provisions in rejecting the referendum petition.  *See State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9.  Pinkston argues that the board abused its discretion and clearly disregarded the law when it sustained Highland Realty's protest on February 21, 2023.

*1.  Statutory requirements*

**{¶ 26}** Under R.C. 519.12(H), the referendum petition had to (1) contain the number and title of the zoning-amendment application, (2) provide "the name by which the amendment is known," and (3) "furnish[] * * * a brief summary of" the contents of the zoning amendment.  *Accord State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 19. Only the brief-summary requirement is at issue in this case.

**{¶ 27}** A brief summary is required to ensure that a referendum of a zoning amendment fairly and accurately presents the issue to voters.  *State ex rel. Hamilton v. Clinton Cty. Bd. of Elections*, 67 Ohio St.3d 556, 559, 621 N.E.2d 391 (1993) (involving identical language in R.C. 303.12(H)).  The petition's summary therefore must identify the property's location and apprise the reader of the property's current zoning status and the nature of the requested change.  *State ex rel. T-Bill Dev. Co., L.L.C. v. Union Cty. Bd. of Elections*, 166 Ohio St.3d 250, 2021-Ohio-3535, 185 N.E.3d 50, ¶ 16.  A summary that "contains material omissions that would confuse the average person" does not comply with R.C. 519.12(H).  *State ex rel. Donaldson*

*v. Delaware Cty. Bd. of Elections*, 166 Ohio St.3d 55, 2021-Ohio-2943, 182 N.E.3d 1135, ¶ 13.

### 2. *Evidence does not show that maps were attached to the part-petitions*

{¶ 28} At the hearing before the board of elections, Pinkston presented evidence attempting to show that a map specifying several details about the proposed development was attached to each part-petition. If each part-petition had included such a map, Highland Realty's concerns might be obviated. *See State ex rel. Barney v. Union Cty. Bd. of Elections*, 159 Ohio St.3d 50, 2019-Ohio-4277, 147 N.E.3d 595, ¶ 33-34 (material information provided in an attachment but not in the petition's summary satisfied the brief-summary requirement). But Pinkston has not proved by clear and convincing evidence that each part-petition had a map attached to it. The undisputed evidence is that the petition filed with the township and submitted to the board of elections included just one map—not separate maps for each part-petition. This court therefore must determine whether the summary itself satisfies R.C. 519.12(H).

### 3. *The petition summary does not borrow text from a zoning resolution*

{¶ 29} Pinkston argues that the petition summary complied with R.C. 519.12(H) because it "substantially recited the text of the zoning resolution of the board of township trustees." To support this argument, Pinkston cites *State ex rel. McCord v. Delaware Cty. Bd of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 43, in which this court stated that "when a referendum petition's summary of a resolution contains substantially the same wording as the resolution itself, * * * the summary complies with the statutory requirement, even when the summary fails to include a statement regarding the meaning of the zoning classifications, the purpose of the zoning change, or the uses specified in the development plan approved by the resolution."

**{¶ 30}** This principle does not support Pinkston's claim, however, because the petition in this case did not summarize a zoning *resolution* passed by the board of trustees. Pinkston fails to recognize that the zoning amendment at issue was proposed by Highland Realty's *application*, not by a resolution of the board of trustees. *See Tam O'Shanter Co.*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, at ¶ 18 (describing the three ways a township zoning amendment may be proposed). Here, the petition's summary borrowed language from the minutes of the board of trustees' October 10, 2022 meeting. Pinkston has not shown that using that language shields the petition's summary from scrutiny.

*4. The petition summary did not contain material omissions and was not misleading*

**{¶ 31}** As noted above, to satisfy R.C. 519.12(H), a brief summary must identify the location of the property at issue, its current zoning status, and the nature of the requested change. *T-Bill Dev. Co.*, 166 Ohio St.3d 250, 2021-Ohio-3535, 185 N.E.3d 50, at ¶ 16. The petition summary in this case meets that basic standard: It provides parcel numbers and an address for the property, along with its current zoning ("Planned Institutional District (PIND)"), the proposed zoning ("Planned Residential District (PRD)"), and the nature of the proposed development ("single-family homes"). Under this court's precedent, the petition summary at issue in this case satisfies R.C. 519.12(H).

**{¶ 32}** The board and Highland Realty argue, however, that the petition summary leaves out material information. A summary does not comply with R.C. 519.12(H) when it "contains material omissions that would confuse the average person." *Donaldson*, 166 Ohio St.3d 55, 2021-Ohio-2943, 182 N.E.3d 1135, at ¶ 13. The board found two omissions—(1) a failure "to adequately describe the nature of the requested zoning change" and (2) the omission of information about Highland Realty's modification to its original application.

### a. Number of homes and density

{¶ 33} In support of the board's first finding, Highland Realty and the board cite *Shelly & Sands, Inc. v. Franklin Cty. Bd. of Elections*, 12 Ohio St.3d 140, 142, 465 N.E.2d 883 (1984), in which this court found that a petition summary was "ambiguous and misleading because it failed to apprise the reader * * * of the precise nature of the requested change." Highland Realty and the board suggest that to understand the "precise nature" of the proposed change, one must know how many homes would be built in the proposed development. They support their argument by noting that the summaries at issue in *T-Bill Dev. Co.* and *State ex rel. Hillside Creek Farms, L.L.C. v. Clark Cty. Bd. of Elections*, 166 Ohio St.3d 77, 2021-Ohio-3214, 182 N.E.3d 1153, both identified the number of homes being proposed. *See T-Bill Dev. Co.* at ¶ 5; *Hillside Creek Farms* at ¶ 5. But neither *T-Bill Dev. Co.* nor *Hillside Creek Farms* held that a petition's summary must indicate the number of homes being proposed in a residential development. Those cases therefore do not support the board's finding.

{¶ 34} Highland Realty and the board also argue that the number of proposed homes must have been material because circulators testified at the protest hearing that when they were collecting signatures, they talked about the number of homes and the density of the development. To support this argument, the board cites *Jacquemin*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, at ¶ 11, in which this court indicated that the overall context of a proposed development informs what information is material. But *Jacquemin* indicated that context must be considered when the petition's summary contains information that is factually inaccurate. *Id*. Although the mistake in that case seemed minor on its face, it was material, considering the totality of the local events that had recently occurred. *See id*. In contrast, here, neither the board nor Highland Realty argues that the petition summary at issue contains inaccuracies. This court's reference to context in *Jacquemin*, therefore, does not support the proposition that statements made by circulators dictate

what information must be included in a petition's summary. Indeed, such a suggestion would be inconsistent with this court's characterization of the standard for evaluating a petition summary as an "objective test," *Shelly & Sands, Inc.* at 142.

{¶ 35} In *Shelly & Sands, Inc.*, this court applied the objective test by examining the petition summary that was at issue in the context of the property's existing and proposed zoning statuses. The statement in *Shelly & Sands, Inc.,* that the petition summary did not describe "the precise nature" of the proposal, *id*. at 142, should be understood in the context of that case.

{¶ 36} Shelly & Sands, Inc., had been operating a commercial sand and gravel quarry as a legal nonconforming use on more than 100 acres when it applied for the rezoning of less than two of those acres to permit a new type of sand-and-gravel processing in that small area. *Id*., 12 Ohio St.3d at 140, 465 N.E.2d 883. If voters had rejected the proposed zoning change, Shelly & Sands, Inc., still would have had the right to continue its existing quarry operation. *Id*. The petition summary of the proposed change was "confusing," "ambiguous," and "misleading" because it suggested that a referendum rejecting the proposed change would discontinue the entire existing operation. *Id*. at 142. This court concluded, under these unique facts, that the petition summary "failed to apprise the reader of the present zoning status of the land and of the precise nature of the requested change." *Id*. Contrary to what Highland Realty and the board suggest, *Shelly & Sands, Inc.,* merely requires a petition summary to clearly convey basic information about the proposed change—that is, no more than what this court stated in *T-Bill Dev. Co*., 166 Ohio St. 3d 250, 2021-Ohio-3535, 185 N.E.3d 50.

{¶ 37} The other cases Highland Realty relies on do not establish more onerous requirements. Highland Realty cites *E. Ohio Gas Co. v. Wood Cty. Bd. of Elections*, 83 Ohio St.3d 298, 699 N.E.2d 916 (1998), and *Donaldson*, 166 Ohio St.3d 55, 2021-Ohio-2943, 182 N.E.3d 1135, arguing that the petition summary at issue here fails to adequately describe the nature of the proposed zoning change or

the use that the change would permit. But neither *E. Ohio Gas Co.* nor *Donaldson* supports the position that the petition summary at issue here is inadequate. The petition summary in *E. Ohio Gas Co.* was ambiguous because it included only part of the relevant language. And the petition summary in *Donaldson* was deficient because, among other reasons, it stated only that the proposal would " 'include sections detailing * * * permitted uses, open space and prohibited uses.' " (Ellipsis sic.) *Id.* at ¶ 15, quoting the petition summary. In other words, the petition summary in *Donaldson* provided no specific information about the uses that the zoning amendment would permit. *Id.* In contrast, the summary at issue here unambiguously apprises readers of the specific use the proposal would permit: "the development of single-family homes."

{¶ 38} For these reasons, we conclude that the board abused its discretion and acted contrary to law in finding that the petition summary improperly omitted information about the nature of the proposed zoning change.

### b. Modifications to the application

{¶ 39} Highland Realty and the board also argue that the petition summary omitted material information by failing to describe the modifications Highland Realty had made to its original application. Highland Realty argues that because the petition summary does not include information about the modifications, it "convey[s] the false impression that the rezoning as approved was the same as the rezoning as initially proposed."

{¶ 40} Precedent does not support this argument or the board's finding. "[I]t is the zoning amendment *as adopted* by the township that must be summarized in the petition." (Emphasis added.) *Donaldson*, 66 Ohio St.3d 55, 2021-Ohio-2943, 182 N.E.3d 1135, at ¶ 18. This court has explained that "it is not the responsibility of the referendum's advocates to educate themselves about the history of the proposal, much less reflect that history in their summary." *Hillside Creek Farms*, 166 Ohio

14

St.3d 77, 2021-Ohio-3214, 182 N.E.3d 1153, at ¶ 34. *See also T-Bill Dev. Co.*, 166 Ohio St.3d 250, 2021-Ohio-3535, 185 N.E.3d 50, at ¶ 24 ("The summary must accurately reflect the zoning amendment, not the history of a proposed development or changes that were made before the amendment's adoption by the township trustees").

{¶ 41} Because the petition summary at issue in this case did not need to describe Highland Realty's earlier applications, the board abused its discretion and acted contrary to law in finding that the summary improperly omitted that information.

### III. CONCLUSION

{¶ 42} We conclude that the board of elections abused its discretion and disregarded applicable law in deciding that the petition summary was deficient. The summary identified the size and location of the land at issue, the proposed zoning change, and the nature of the intended development. We therefore grant the writ and order the board of elections to place the referendum on the May 2, 2023 ballot.

Writ granted.

DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, C.J., and FISCHER, DEWINE, and DETERS, JJ., concur in judgment only.

_____

Dinsmore & Shohl, L.L.P., Jennie K. Ferguson, and Joshua M. Cartee, for relators.

Melissa A. Schiffel, Delaware County Prosecuting Attorney, and Mark W. Fowler and Vince J. Villio, Assistant Prosecuting Attorneys, for respondent.

Vorys, Sater, Seymour & Pease, L.L.P., Joseph R. Miller, Christopher L. Ingram, and Muna Abdallah, for intervening respondent.

_____