[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Shamro v. Delaware Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-941.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-941

THE STATE EX REL. SHAMRO *v*. DELAWARE COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Shamro v. Delaware Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-941.]**

*Elections—Mandamus—R.C. 519.12(H)—Writ sought to compel board of elections to place a zoning referendum on primary-election ballot—Because referendum petition's summary of zoning amendment was misleading, board of elections did not abuse its discretion or act in clear disregard of applicable legal provisions when it sustained protest against the petition and decertified the zoning referendum from ballot—Writ denied.*

(No. 2025-0337—Submitted March 15, 2025—Decided March 19, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by FISCHER, DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. KENNEDY, C.J., concurred in part and dissented in part, with an opinion joined by BRUNNER, J.

**Per Curiam.**

{¶ 1} In this expedited election case, relator, Chris Shamro, seeks a writ of mandamus ordering respondent, the Delaware County Board of Elections, to place a zoning referendum on the May 6, 2025 primary-election ballot. The referendum concerns a township-zoning amendment for a property in Brown Township. The board of elections sustained an election protest and decertified the referendum from the ballot, finding that the referendum petition did not contain the correct name of the zoning amendment, contained a misleading summary of the zoning amendment, and was accompanied by a misleading map of the property to be rezoned. The owner of the property to be rezoned, Henmick Brewery, L.L.C. ("Henmick"),[1] has intervened as a respondent. 2025-Ohio-826.

{¶ 2} Because Shamro has not shown that the board of elections abused its discretion or acted in clear disregard of applicable legal provisions when it determined that the referendum petition's summary of the zoning amendment was misleading, sustained the protest against the petition, and decertified the zoning referendum from the ballot, we deny the writ.

## FACTUAL, PROCEDURAL, AND LEGAL BACKGROUND

{¶ 3} R.C. 519.12 sets forth the process to amend certain township-zoning resolutions and to seek a zoning referendum that would allow voters to approve or reject those amendments. *See generally State ex rel. Valentine v. Schoen*, 2024-Ohio-3439, ¶ 2. If a board of township trustees votes to adopt a zoning amendment, the amendment takes effect 30 days after the date of its adoption unless, before that time, a referendum petition is filed with the board of township trustees. R.C. 519.12(H). The petition must contain signatures of registered voters residing in the

---

1. In the record, Henmick's name is variously referred to as "Henmick, LLC" and "Henmick Brewery, LLC." It is not clear which is accurate or if they are actually two different entities, but no party raises the discrepancy as an issue.

unincorporated area of the township or part of that unincorporated area included in the zoning plan equaling at least 15 percent of the total vote cast for all candidates for governor in that area in the last gubernatorial election. *Id.* Each part of the petition "shall contain the number and the full and correct title, if any, of the zoning amendment resolution, motion, or application, furnishing the name by which the amendment is known and a brief summary of its contents." *Id.* The petition must be "accompanied by an appropriate map of the area affected by the zoning proposal." *Id.* The board of township trustees then certifies the petition to the board of elections. *Id.* The board of elections reviews the petition, and if it determines that the petition is sufficient and valid, the referendum shall be voted on at the next general or primary election occurring at least 90 days after the petition was filed with the board of township trustees. *Id.*

{¶ 4} Brown Township is a township in Delaware County. In April 2024, Henmick, the owner of property in Brown Township, filed a rezoning application and final development plan for the property. The property is a farm that has a brewery on it, and Henmick generally seeks a zoning amendment to allow more development on the property. The application stated that the project name was "Henmick Brewery." The application proposed to rezone the property from "Farm Residential (FR-1) District" to "Planned Commercial and Office District – (PC)." In June, Henmick filed a revised rezoning application and final development plan that changed the size of the property to be rezoned from 89.60 acres to 26.736 acres. In July, Henmick submitted proposed revisions to the revised rezoning application and final development plan.

{¶ 5} At a meeting held on July 22, the Brown Township Board of Trustees approved the zoning amendment, which one trustee referred to at the meeting as the "Henmick Brewery Planned Commercial and Office District rezoning." Immediately after initially approving the zoning amendment, the board of trustees approved several modifications to the amendment and final development plan.

**{¶ 6}** Shamro and others circulated for signatures part-petitions to hold a referendum on the zoning amendment. On the line of the petition-form for stating the "[n]ame and number of proposal, if any," the part-petitions stated "Henmick Brewery, unnumbered." The part-petitions included a summary of the zoning amendment and a map of the property to be rezoned. The map is a copy of a map that Henmick submitted with its revised rezoning application, although testimony at the protest hearing indicated that the map accompanying the part-petitions was printed on a smaller sheet of paper than the original map.

**{¶ 7}** On August 19, Shamro filed the signed part-petitions with the fiscal officer of Brown Township. On December 17, the board of elections certified the referendum petition for the May 6, 2025 primary-election ballot. The parties do not dispute that the petition contained sufficient signatures.

**{¶ 8}** On December 27, 2024, Henmick and Garrett Gandee filed a protest with the board of elections against the referendum petition. Gandee is a registered voter in Brown Township who works for a civil-engineering firm that provided services to Henmick regarding the proposed development. Henmick and Gandee alleged that the petition was statutorily deficient in three ways: (1) it did not contain the correct name of the zoning amendment, (2) it contained a misleading summary of the zoning amendment, and (3) it was accompanied by a misleading map of the property to be rezoned.

**{¶ 9}** On February 25, 2025, the board of elections held a protest hearing at which it heard testimony from witnesses. At the conclusion of the hearing, the board of elections voted 4 to 0 to sustain the protest and decertify the zoning referendum from the ballot. The board member making the motion to decertify the zoning referendum stated that the referendum petition did not contain the correct name of the zoning amendment, that the summary of the zoning amendment was misleading, and that the map was misleading—i.e., the board of elections agreed

4

with all three reasons that Henmick and Gandee raised in their protest against the referendum petition.

{¶ 10} Shamro claims that he requested an expedited transcript of the protest hearing and that he received it on March 3. Shamro filed his verified complaint for a writ of mandamus on March 7. He seeks a writ ordering the board of elections to place the zoning referendum on the May 6, 2025 primary-election ballot. He also seeks an award of attorney fees and expenses.

{¶ 11} Because this case relates to an election that will be held within 90 days, it is classified as an expedited election case under S.Ct.Prac.R. 12.08. In addition, we sua sponte issued an order further expediting the briefing schedule. 2025-Ohio-795. Henmick filed a motion to intervene as a respondent, which we granted. 2025-Ohio-826. The parties have now filed evidence and briefs.

## ANALYSIS

{¶ 12} A writ of mandamus "may issue ordering a board of elections to place a referendum on the ballot." *Valentine*, 2024-Ohio-3439, at ¶ 7. To obtain a writ of mandamus, Shamro must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the board of elections to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *Id.* Shamro lacks an adequate remedy in the ordinary course of the law due to the proximity of the election. *See id.*; *see also State ex rel. Miller v. Union Cty. Bd. of Elections*, 2023-Ohio-3664, ¶ 15.

{¶ 13} "In a mandamus action challenging the decision of a county board of elections, the standard is whether the board engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." (Cleaned up.) *Valentine* at ¶ 8. "'An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude.'" *Id.*, quoting *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections*, 1997-Ohio-315, ¶ 13. Shamro does not allege that the board of elections engaged in fraud or corruption.

**{¶ 14}** The board of elections found at the protest hearing, and the board of elections and Henmick argue here, that the referendum petition failed to comply with the statutory requirements, R.C. 519.12(H), for three reasons: (1) it did not contain the correct name of the zoning amendment, (2) it contained a misleading summary of the zoning amendment, and (3) it was accompanied by a misleading map of the property to be rezoned. "The requirements of R.C. 519.12(H) demand strict compliance." *State ex rel. Barney v. Union Cty. Bd. of Elections*, 2019-Ohio-4277, ¶ 15; *see also State ex rel. Quinn v. Delaware. Cty. Bd. of Elections*, 2018-Ohio-966, ¶ 30. If a referendum petition fails to satisfy any of the requirements of R.C. 519.12(H), that failure is a sufficient reason for a board of elections to decertify a zoning referendum from the ballot. *See Valentine* at ¶ 13, 15 (failure of petitioners to submit an appropriate map with their referendum petition was sufficient reason for board of elections to sustain a protest against the petition and keep zoning referendum off the ballot); *see also E. Ohio Gas Co. v. Wood Cty. Bd. of Elections*, 1998-Ohio-285, ¶ 13-15 (because referendum petition did not include an accurate and unambiguous brief summary of the zoning amendment, the board of elections acted in clear disregard of R.C. 519.12(H) and applicable precedent by denying protest against the petition).

**{¶ 15}** Each part of a referendum petition must "contain the number and the full and correct title, if any, of the zoning amendment resolution, motion, or application, furnishing the name by which the amendment is known and a *brief summary of its contents*." (Emphasis added.) R.C. 519.12(H). "The zoning referendum petition summary must be accurate and unambiguous." *E. Ohio Gas Co.* at ¶ 11. "'[I]f the summary is misleading, inaccurate, or contains material omissions which would confuse the average person, the petition is invalid and may not form the basis for submission to a vote.'" *Id.*, quoting *Shelly & Sands, Inc. v. Franklin Cty. Bd. of Elections*, 12 Ohio St.3d 140, 141 (1984).

{¶ 16} The board of elections found, and the board of elections and Henmick argue here, that one way in which the referendum petition's summary of the zoning amendment was misleading was that it did not incorporate the modifications that had been made to the amendment. The board of elections and Henmick contend that the summary does not mention four modifications that the board of trustees approved: (1) a modification removing "agritourism" as a permitted use, (2) a modification prohibiting outdoor live music after 10:00 p.m., (3) a modification requiring Henmick to implement certain dust mitigation, and (4) a modification requiring Henmick to plant additional trees.

{¶ 17} In response, Shamro argues that the board of trustees never actually approved these modifications. This is inaccurate. At a meeting held on July 22, 2024, the board of trustees voted in favor of a motion to approve the modifications to the zoning amendment and final development plan immediately after voting on the zoning amendment. Shamro presents no authority to support his argument that the board of trustees' procedure was improper, and generally, "alleged defects in a township's enactment of a zoning amendment are not a proper basis for granting mandamus relief against a board of elections that has sustained a protest to a referendum petition," *State ex rel. Donaldson v. Delaware Cty. Bd. of Elections*, 2021-Ohio-2943, ¶ 24. "[Boards of elections] do not sit as arbiters of the legality of the underlying local legislation that is the subject of the referendum." *Id*.

{¶ 18} In his reply brief, Shamro cites *State ex rel. Rife v. Franklin Cty. Bd. of Elections*, 70 Ohio St.3d 632 (1994). In *Rife*, the relator submitted a petition for a referendum on a zoning resolution and the board of elections sustained a protest to the petition on the ground that the petition did not adequately summarize the rezoning resolution because it did not include the specified uses for the rezoned property that were described in the development plan. This court granted a writ, finding that the failure to summarize the specified uses was not material, because the resolution itself did not mention the specified uses. *Id.* at 634. It is not clear in

*Rife* whether the zoning body (in that case, the board of county commissioners) ever approved the specified uses. Here, it is clear from the minutes of the board of trustees' July 22, 2024 meeting that immediately after approving the zoning amendment, the board of trustees approved the modifications to the zoning amendment and final development plan. And ultimately the modifications are incorporated into the zoning text. Thus, the record refutes Shamro's argument that the board of trustees did not approve the modifications to the zoning amendment.

**{¶ 19}** Other than his argument that the board of trustees did not approve the modifications, Shamro does not argue that the failure to include the modifications in the referendum petition's summary of the zoning amendment did not cause the summary to be misleading or to contain material omissions. We conclude that the board of elections did not abuse its discretion or act in clear disregard of applicable legal provisions when it determined that the referendum petition's summary of the zoning amendment was misleading because it did not include the approved modifications to the zoning amendment.

**{¶ 20}** Because the board of elections did not abuse its discretion or act in clear disregard of applicable legal provisions when it determined that the referendum petition's summary of the zoning amendment was misleading, we conclude that Shamro is not entitled to a writ. Therefore, we need not address his other arguments for why the board of elections abused its discretion or acted in clear disregard of applicable legal provisions. *See State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 2016-Ohio-5880, ¶ 9 (in mandamus case, after deciding that one argument for keeping a zoning referendum off the ballot was meritorious, this court did not address other arguments).

**{¶ 21}** Finally, in his complaint, Shamro requested an award of attorney fees and expenses. However, other than one conclusory sentence in his merit brief that does not include a citation to authority, he included no separate argument in his merit brief concerning attorney fees and expenses. Thus, Shamro has waived

his request for attorney fees and expenses.  *See Valentine*, 2024-Ohio-3439, ¶ 14 (the relator waived claim for awards of costs and attorney fees by failing to include separate argument in his briefs concerning awards of costs and attorney fees).

## CONCLUSION

**{¶ 22}** Shamro has not shown that the board of elections abused its discretion or acted in clear disregard of applicable legal provisions when it determined that the referendum petition's summary of the zoning amendment was misleading, sustained the protest against the petition, and decertified the zoning referendum from the ballot.  Thus, we deny the writ.  We also deny Shamro's request for an award of attorney fees and expenses.

Writ denied.

_____

**KENNEDY, C.J., joined by BRUNNER, J., concurring in part and dissenting in part.**

**{¶ 23}** I concur in the majority's judgment to the extent that it denies relator, Chris Shamro, an award of attorney fees and expenses because he has waived the request for an award of attorney fees and expenses.  *See* majority opinion, ¶ 21.  I dissent, however, from the majority's judgment to the extent that it denies Shamro a writ of mandamus.

**{¶ 24}** Contrary to the majority's judgment, in my view, respondent, the Delaware County Board of Elections, abused its discretion in determining that the referendum petition was deficient.  I would hold that the petition complied with the statutory requirements of R.C. 519.12(H).

**{¶ 25}** The referendum petition correctly provided the name by which the township-zoning amendment is known, and the petition's summary of the zoning amendment and the map of the property to be rezoned that accompanied the petition are not misleading.  Shamro is therefore entitled to the requested writ of mandamus

9

compelling the board of elections to place the zoning referendum on the May 6, 2025 primary-election ballot. For these reasons, I concur in part and dissent in part.

**Law and Analysis**

*Standard of Review*

{¶ 26} In determining whether Shamro is entitled to a writ, the standard of review is "whether the board 'engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions.'" *State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 2017-Ohio-8167, ¶ 16, quoting *Whitman v. Hamilton Cty. Bd. of Elections*, 2002-Ohio-5923, ¶ 11. "'An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude.'" *State ex rel. Hamilton Cty. Bd. of Commrs. v. State Emp. Relations Bd.*, 2004-Ohio-3122, ¶ 17, quoting *State ex rel. Grady v. State Emp. Relations Bd.*, 1997-Ohio-221, ¶ 10.

{¶ 27} In this case, Shamro does not argue that the board of elections engaged in fraud or corruption. Consequently, review of the board of elections' decision is limited to whether it abused its discretion or acted in plain disregard of applicable legal provisions when it decided that Shamro's referendum petition was deficient for failing to comply with R.C. 519.12(H). In this case, the board of elections did abuse its discretion.

*Referendum-Petition Requirements*

{¶ 28} R.C. 519.12(H) requires that a referendum petition contain (1) the number of the zoning-amendment application, (2) the full and correct title, if any, of the zoning amendment-application, (3) the name by which the zoning amendment is known, and (4) a brief summary of the contents of the zoning amendment. *See Tam O'Shanter Co.* at ¶ 19. The petition must also be accompanied by an appropriate map of the area affected by the zoning proposal. R.C. 519.12(H).

{¶ 29} The board of elections sustained the protest against the referendum petition, finding that the petition (1) failed to correctly state the name by which the

zoning amendment is known, (2) failed to provide an adequate brief summary of the zoning amendment, and (3) was not accompanied by an appropriate map of the property to be rezoned. Because the majority opinion concludes that the board of elections did not abuse its discretion in determining that the petition's summary was misleading, *see* majority opinion at ¶ 2, I begin with the second basis given by the board of elections for sustaining the protest against the petition.

*The Summary of the Zoning Amendment*

**{¶ 30}** The board of elections determined that the referendum petition's summary of the zoning amendment was misleading—and therefore invalid—for three reasons: (1) the parcels of land subject to the amendment were not properly identified, (2) the description of the present use of the property to be rezoned and the nature of the requested zoning change was insufficient, and (3) the summary failed to incorporate the oral modifications that the Brown Township Board of Trustees approved at a hearing on July 22, 2024.

**{¶ 31}** As this court has previously held, "[t]he overriding purpose of the summary is to fairly and accurately present the question or issues to be decided so as to ensure that voters can make free, intelligent, and informed decisions." *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 2016-Ohio-5880, ¶ 7.

> [W]hen a referendum petition's summary of a resolution contains substantially the same wording as the resolution itself, we have held that the summary complies with the statutory requirement, even when the summary fails to include a statement regarding the meaning of zoning classifications, the purpose of the zoning change, or the uses specified in the development plan approved by the resolution.

*State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 2005-Ohio-4758, ¶ 43. However, this general rule is not always applicable. *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections*, 1997-Ohio-348, ¶ 16.

**{¶ 32}** When a referendum petition goes further to summarize the rezoning application that was presented to the zoning body, the additional language must be accurate and unambiguous. *McCord* at ¶ 44-46. And "'[i]f the summary is misleading, inaccurate, or contains material omissions which would confuse the average person, the petition is invalid and may not form the basis for submission to a vote.'" *E. Ohio Gas Co. v. Wood Cty. Bd. of Elections*, 1998-Ohio-285, ¶ 11, quoting *Shelly & Sands, Inc. v. Franklin Cty. Bd. of Elections*, 12 Ohio St.3d 140, 141 (1984). This court has found that a referendum petition's summary was "'ambiguous and misleading' when it 'failed to apprise the reader of the present zoning status of the land and of the precise nature of the requested change.'" *State ex rel. Donaldson v. Delaware Cty. Bd. of Elections*, 2021-Ohio-2943, ¶ 15, quoting *Shelly & Sands* at 142.

**{¶ 33}** In this case, the referendum petition's summary language on both the present use of the property and the nature of the requested zoning change was legally sufficient. The present-use description of the property is nearly an exact copy of the language provided in the introduction of the revised rezoning application. And the nature of the zoning change—what the applicant intends to do with the property—is also nearly an exact copy of that introduction. In accordance with this court's precedent in *McCord*, the petition's summary complies with the statutory requirement under R.C. 519.12(H) because the summary "contains substantially the same wording as the [application] itself," *McCord* at ¶ 43.

**{¶ 34}** Moreover, the failure of the referendum petition to incorporate the modifications that the Brown Township Board of Trustees orally approved at the July 22 hearing is of no consequence. The board of trustees adopted four

modifications to the rezoning application: (1) removing "agritourism" as a permitted use, (2) prohibiting outdoor live music after 10:00 p.m., (3) requiring the applicant to implement certain dust mitigation, and (4) directing the applicant to plant additional trees. *See* majority opinion at ¶ 16. But these modifications are not material conditions of the zoning amendment that is summarized in the referendum petition.

{¶ 35} Pursuant to R.C. 519.21(C), a zoning body may not prohibit the use of any land for "agritourism" in a district zoned for agricultural, industrial, residential, or commercial uses. So the addition or removal of "agritourism" as a permitted use in the rezoning application does not alter the precise nature of the requested change. And the requirements for certain dust mitigation, planting additional trees on the property, and prohibiting outdoor live music after 10:00 p.m. are not material conditions either. *See State ex rel. Voters First v. Ohio Ballot Bd.*, 2012-Ohio-4149, ¶ 30 (an omission in ballot language "must not be material, i.e., its absence must not affect the fairness or accuracy of the text").

{¶ 36} In *State ex rel. Barney v. Union Cty. Bd. of Elections*, the Jerome Township Board of Trustees approved five modifications that were set forth in an attachment to a rezoning application. 2019-Ohio-4277, ¶ 4. The modifications were as follows: an increase to the minimum setbacks for lots that had shared driving access along Crottinger Road; the removal of "at least" five lots adjacent to the residence at 10420 Crottinger Road; adding language to state plainly that any golf course or other use operated or conducted "on the Open Space" to be open to the public; an additional $500 per lot fee to be paid by the developer; and a requirement that prior to construction, an option contract for the golf-course area be executed and recorded and be substantially similar to the one prepared and proposed by the applicant. *Id.* For these five modifications in *Barney*, the chairman of the Union County Board of Elections conceded that they were material because they modified the requested zoning changes (although the chairman and other board

members considered it sufficient that the five modifications were presented as an attachment to the referendum petition rather than as part of the petition's summary). *Id*. at ¶ 33.

{¶ 37} As this court recognized in *Barney*, material modifications affect the land—the property subject to the rezoning application. And the modifications in *Barney* were material because they changed the attributes of the land subject to rezoning. For example, the modifications altered the boundaries of lots, removed lots, and regulated the use of certain land as a golf course. In contrast, in this case, the modifications do not change the physical makeup of the land's boundaries or plot sizes. Dust mitigation relates to a potential nuisance. Planting of additional trees affects aesthetics. And prohibiting outdoor live music after 10:00 p.m. protects neighbors' quiet enjoyment of their land. None of these modifications were material to the zoning status of the land sought to be rezoned or the precise nature of the requested change. Not including the modifications in the referendum petition's summary of the zoning amendment did not cause the summary to be misleading or inaccurate or to contain a material omission that would confuse the average person. *See Barney* at ¶ 32.

{¶ 38} For the foregoing reasons, I would hold that the board of elections abused its discretion in finding that the referendum petition's summary of the zoning amendment was deficient—the summary "contains substantially the same wording as the [amendment] itself." *McCord*, 2005-Ohio-4758, at ¶ 43. While the majority addresses only the summary in denying the writ, the board of elections sustained the protest against the petition on three bases. I now turn to the board of elections' two remaining reasons for sustaining the protest against the petition.

*The Known Name of the Zoning Amendment*

{¶ 39} The board of elections' first ground for sustaining the protest against the referendum petition is based on its determination that "Henmick Brewery" was

14

not the correct "name by which the [zoning] amendment is known," R.C. 519.12(H). That determination, however, is contrary to the evidence.

{¶ 40} This court has held that a zoning amendment's known name is determined by examining "evidence that shows how the township board of trustees—the promulgating entity—identified the zoning amendment." *Tam O'Shanter Co.*, 2017-Ohio-8167, at ¶ 31. "In plain terms, the name requirement of R.C. 519.12(H) looks to what the trustees called the *proposal*, not what they called the legislative vehicle that would enact the proposal." (Emphasis in original.) *State ex rel. Quinn v. Delaware Cty. Bd. of Elections*, 2018-Ohio-966, ¶ 33. Relevant evidence for this analysis includes the board of trustees' notice of decision, public-hearing notices, and meeting agendas and also includes—to a lesser extent—hearing testimony. *See Tam O'Shanter Co.* at ¶ 32.

{¶ 41} The referendum petition provides that "Henmick Brewery" is the known name of the zoning amendment. In contrast, the board of elections asserts that the board of trustees identified the zoning amendment as the "Henmick Brewery Planned Commercial and Office District." In reviewing the record, however, both names were used at different times throughout the rezoning-application proceedings.

{¶ 42} The revised rezoning application refers to the project as "Henmick Brewery," and the Brown Township Zoning Commission used that name at its June 5 and 6, 2024 hearings. The Brown Township Board of Trustees referred to the project as the "Henmick Brewery Planned Commercial and Office District" at its July 8 and 22 hearings. In these instances, then, the zoning amendment was referred to as a variation of "Henmick Brewery." Whether this use included "Planned Commercial and Office District" does not change that "Henmick Brewery" was used throughout the rezoning-application process to identify the zoning amendment.

**{¶ 43}** The "known name" requirement of R.C. 519.12(H) is "what the trustees called the *proposal*" (emphasis in original), *Quinn*, 2018-Ohio-966, at ¶ 33, and here, the known name was "Henmick Brewery." Therefore, I would hold that the board of elections abused its discretion when it determined that "Henmick Brewery" is not "the name by which the [zoning] amendment is known," R.C. 519.12(H).

*The Accompanying Map*

**{¶ 44}** The board of elections' third ground for sustaining the protest against the referendum petition is based on its determination that the map accompanying the petition was misleading. *See id.*

**{¶ 45}** Maps specifically approved by a township board of trustees are generally sufficient to submit with a referendum petition. *See State ex rel. Gemienhardt v. Delaware Cty. Bd. of Elections*, 2006-Ohio-1666, ¶ 56. But an exact copy of the approved map is not required. Rather, "[a] map accompanying a referendum petition should be considered appropriate or suitable for purposes of R.C. 519.12(H) if it does not mislead the average person about the area affected by the zoning resolution." *McCord*, 2005-Ohio-4758, at ¶ 63.

**{¶ 46}** Shamro attached to the referendum petition a copy of a map that was submitted with the applicant's revised rezoning application. The only noticeable difference between the map submitted with the revised rezoning application and the map accompanying the referendum petition is that the latter map had been resized. The information included in that map is the same as what the applicant presented to the board of trustees.

**{¶ 47}** The entirety of the property to be rezoned is contained within the map accompanying the referendum petition. The map contains the address of the property, the road along which the property lies, the parcel numbers that will be affected by the zoning amendment, information about adjoining properties, and a boundary line labeled "Proposed Limit of Rezoning."

**{¶ 48}** Because the map accompanying the referendum petition appropriately depicts the property affected by the zoning amendment, the map meets the requirements of R.C. 519.12(H). Nothing about the map would "mislead the average person about the area affected by the zoning resolution." *McCord*, 2005-Ohio-4758, at ¶ 63. For this reason, I would hold that the board of elections abused its discretion when it found the map to be misleading.

### Conclusion

**{¶ 49}** The right of referendum is of paramount importance. *See State ex rel. Ohio Gen. Assembly v. Brunner*, 2007-Ohio-4460, ¶ 8. Contrary to the majority's judgment, the referendum petition complied with the statutory requirements of R.C. 519.12(H).

**{¶ 50}** For the foregoing reasons, I would hold that the board of elections abused its discretion when it found that the referendum petition was deficient. In my view, the petition correctly provided the name by which the township-zoning amendment is known, and the petition's summary of the zoning amendment and the map of the property to be rezoned that accompanied the petition are not misleading. Therefore, I dissent in part from the majority's judgment and would grant the requested writ of mandamus compelling the board of elections to place the zoning referendum on the May 6, 2025 primary-election ballot. I concur in the majority's judgment to the extent that it denies Shamro an award of attorney fees and expenses. Accordingly, I concur in part and dissent in part.

_____

Shane W. Ewald, L.L.C., and Shane W. Ewald; and the Law Office of Tricia A. Sprankle and Tricia Ann Sprankle, for relator.

Melissa A. Schiffel, Delaware County Prosecuting Attorney, and Vince J. Villio and Lee Ann E. Forgrave, Assistant Prosecuting Attorneys, for respondent.

Vorys, Sater, Seymour and Pease, L.L.P., Joseph R. Miller, Christopher L. Ingram, and Garrett M. Anderson, for intervening respondent.